LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiffs, FLSA Collective*
*Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
—————————————————————

JENIE MARIANI
and JOHN DOE,
*on behalf of themselves, FLSA Collective Plaintiffs*
*and the Class*,

|  |  |
|---|---|
| Plaintiffs, | Case No.: |
| v. | CLASS AND COLLECTIVE ACTION COMPLAINT |
|  | Jury Trial Demanded |
| OTG MANAGEMENT, INC. and LAGUARDIA USA LLC, |  |
| Defendants. |  |

—————————————————————

Plaintiffs, JENIE MARIANI and JOHN DOE ("Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants, OTG MANAGEMENT, INC. and LAGUARDIA USA LLC, ("Defendants"), and state as follows:

**<u>INTRODUCTION</u>**

1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that they are entitled to recover from Defendants: (1) unpaid

1

minimum wage, (2) unpaid overtime compensation, (3) compensation for retaliation, (4) liquidated damages and (5) attorneys' fees and costs.

2.      Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they are entitled to recover from Defendants: (1) unpaid minimum wage, (2) unpaid overtime compensation, (3) unpaid spread of hours premium, (4) compensation for retaliation, (5) statutory penalties, (6) liquidated damages and (7) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5.      Plaintiff JENIE MARIANI is a resident of Kings County, New York.

6.      Defendants:

(a)      OTG MANAGEMENT, INC. is a foreign business corporation organized under the laws of the State of Pennsylvania, with a principal place of business located at 352 Park Avenue South, 10th Floor, New York, New York 10010 and an address for service of process located at 335 West Butler Avenue, Suite 120, Chalfont, Pennsylvania 18914. Defendants operate "OTG Management" through Defendant OTG MANAGEMENT, INC. OTG Management is in the business of instituting dining programs and owns over 200 restaurants and retail locations in North America. Defendants operate "Cotto," "WiBar," "Voyage," among other restaurants at LaGuardia Airport in New York, through Defendant OTG MANAGEMENT, INC.

(b)      LAGUARDIA USA LLC is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 352 Park Avenue South, 10th Floor, New York, New York 10010 and an address for service of process located at c/o LaGuardia USA, LLC, OTG Management, 335 West Butler Avenue, Suite 120, Chalfront, Pennsylvania 18914. OTG Management employees working at LaGuardia Airport in Queens, New York, are issued payroll through Defendant LAGUARDIA USA LLC.

7.      Defendants own and operate a business enterprise under OTG Management that contracts with various airport terminals or airlines to transform airport dining by instituting customized dining programs. The dining programs are designed to create a better travel experience for travelers by creating menus with celebrated chefs, redesigning airport space and introducing technology. As a part of the "elevated airport dining experience," OTG Management controls employment in the restaurants they operate to create a standardized quality of service. OTG Management recruits employees through centralized hiring and offer training to their employees, labeling their employees as crewmembers. OTG Management is comprised of over 200 restaurants and retail locations in ten locations around North America.

8.      At LaGuardia Airport, Defendants operate the following restaurants as a single integrated enterprise:

(a)    Cotto, Terminal C;

(b)    Wibar, Terminal C; and

(c)    Voyage Bakery and Café, Terminal C.

(collectively, "Restaurants"). Specifically, Defendants' Restaurants are engaged in related activities by hiring through a centralized system and paying their employees through the same

payroll system for the Restaurants. The Restaurants are under a common ownership as they are owned and operated under Defendants. The Restaurants serve a common business purpose since employees are interchangeable among Defendants' Restaurants as needed. Defendants implement the same employment policies and practices across the Restaurants.

9.      At all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and New York Labor Law and the Regulations thereunder.

10.      At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

11.      Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt tipped employees, including servers and bartenders, employed by Defendants at Cotto, Wibar, and Voyage in LaGuardia Airport, New York, on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

12.      At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them the proper minimum wage and overtime compensation at the rate of one and one half times the regular hourly rate for work in excess of forty (40) hours per workweek. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs. With regard to Plaintiffs and FLSA Collective Plaintiffs,

Defendants were not entitled to claim any tip credits because they failed to meet statutory requirements under the FLSA.

13.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

14.     Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt tipped employees, including servers and bartenders, employed by Defendants at Cotto, Wibar, and Voyage in LaGuardia Airport, New York, on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

15.     All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

16.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the

Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

17.     Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay minimum wage, (ii) failing to pay overtime compensation, (iii) failing to pay spread of hours premium, (iv) failing to provide proper wage statements per requirements of the New York Labor Law, and (v) failing to provide proper wage and hour notices, at date of hiring and annually, per requirements of the New York Labor Law. With regard to Plaintiffs and Class members, Defendants were also not entitled to claim any tip credits because they failed to meet statutory requirements under the New York Labor Law. Plaintiffs and Class members suffered from Defendants' failure to pay minimum wage due to Defendants' invalid tip credit allowance because Defendants (i) claimed a tip credit that exceeded the statutory amount permissible, (ii) failed to pay Plaintiffs and Class members the prevailing "tip credit" minimum wage, (iii) failed to properly provide tip credit notice at hiring and annually thereafter, (iv) claimed a tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, and (v) failed to provide wage statements indicating tip credit allowance for each payment period. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member.

Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

18.     Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

19.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to

which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

20.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

21.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

(a)     Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

(b)     What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

(c)     At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

(d)     Whether Defendants properly notified Plaintiffs and the Class members of their regular hourly rate and overtime rate;

(e)     Whether Defendants paid Plaintiffs and Class members the proper minimum wage under the New York Labor Law;

(f)      Whether Defendants provided proper notice to Plaintiffs and Class members that Defendants were taking a tip credit;

(g)      Whether Defendants provided proper wage statements informing Plaintiffs and Class members of the amount of tip credit taken for each payment period and other information required to be provided on wage statements;

(h)      Whether Defendants took the proper amount of tip credit allowance from Plaintiffs and Class members under the New York Labor Law;

(i)      Whether Defendants required Plaintiffs and Class members to perform non-tipped work for more than 20 percent of their workday;

(j)      Whether Defendants kept daily records of tips earned by Plaintiffs and Class members;

(k)      Whether Defendants paid Plaintiffs and Class members the proper overtime compensation under the New York Labor Law;

(l)      Whether Defendants paid Plaintiffs and Class members the spread of hours premium as required by the New York Labor Law;

(m)      Whether Defendants provided proper wage statements to Plaintiffs and Class members per requirements of the New York Labor Law; and

(n)      Whether Defendants provided proper wage and hour notices to Plaintiffs and Class members, at date of hiring and annually, per requirements of the New York Labor Law.

## STATEMENT OF FACTS

22.      In or about November 2014, Plaintiff JENIE MARIANI was hired by Defendants to work as a hostess at Defendants' "Cotto" restaurant located at LaGuardia

Airport, Terminal C, Gate C39. In or about May 2015, Defendants changed Plaintiff MARIANI's role from a hostess to a server at Defendants' "Cotto" restaurant. In or around December 2015, Defendants terminated Plaintiff MARIANI's employment in retaliation after Plaintiff MARIANI filed for worker's compensation and requested a schedule change to accommodate her knee injury.

23.     From the the beginning of her employment with Defendants until in or about May 2015, Plaintiff JENIE MARIANI was employed as a hostess at Defendants' "Cotto" restaurant, working approximately twenty-eight to thirty-five hours a workweek. Although Plaintiff MARIANI generally worked at Cotto, on occasion, Plaintiff MARIANI was temporarily sent to work at "Voyage" as a barista on an as needed basis. Regardless of whether Plaintiff MARIANI worked at Cotto or Wibar, she was compensated at the same rate, through Defendants' centralized payroll. While employed by Defendants as a hostess, Plaintiff MARIANI was paid on an hourly basis with an overtime premium of time and a half for all hours worked over forty in a workweek.

24.     In or around May 2015, Defendants promoted Plaintiff MARIANI from a hostess to a server. Plaintiff MARIANI did not receive any wage notices regarding the change, but her managers told her that she was being promoted to a server and to dress accordingly from then on. From in or around May 2015 until in or around December 2015, Plaintiff MARIANI worked for Defendants as a server at Defendants' Cotto restaurant. As a server, Plaintiff MARIANI occasionally worked at "Wibar" on an as needed basis. Plaintiff MARIANI's schedule was as follows:

(a)     In or around May 2015, Plaintiff MARIANI worked approximately thirty-five hours per workweek, working from seven and a half hours to ten hours for four (4) days of the week.

(b)     From in or around June 2015 until in or around November 2015, Plaintiff MARIANI worked an average of forty-three hours per workweek, working from seven and a half hours to ten hours for five (5) days of the week.

(c)     From in or around November 2015 until the end of her employment in December 2015, Plaintiff MARIANI worked approximately thirty-five hours per workweek, working from seven and a half hours to ten hours for four (4) days of the week.

From in or around May 2015 until in or around December 2015, Plaintiff MARIANI's shifts varied from 4:30am to 12:00pm, 6:00am to 2:00pm, 11:00am to 9:00pm, and 2:00pm to 12:00am.

25.     From May 2015 until December 2015, when Plaintiff MARIANI worked as a server, Defendants did not compensate her for any of her hours worked. Even assuming a valid tip credit, Defendants did not pay Plaintiff MARIANI the prevailing "tip credit" minimum wage. Throughout this time period, Plaintiff MARIANI had to rely solely on the tips that she earned for her income. During this time period, Defendants paid Plainitff MARIANI her tips in cash and failed to provide Plaintiff with any wage statements. Throughout her employment with Defendants as a server, Plaintiff MARIANI was not compensated for any of her overtime hours in which she worked over forty in a workweek. On days that Plaintiff MARIANI worked ten or more hours, Defendants did not compensate Plaintiff MARIANI with her spread of hours premium. Based on Plaintiff MARIANI's personal experience, observations and conversations with other tipped employees, Plaintiffs,

FLSA Collective Plaintiffs and Class members were all compensated with their cash tips, and were not paid any wages, their overtime premium or their spread of hour premium.

26.     Defendants compensated Plaintiffs, FLSA Collective Plaintiffs and Class members through a tip pool created and managed by Defendants. Defendants pooled all tips earned in a given workday, tracked the number of hours Plaintiffs, FLSA Collective Plaintiffs and Class members worked on a given day, and assigned them points based on the number of hours they worked. Defendants distributed the pooled tips based on the assigned points. Plaintiffs, FLSA Collective Plaintiffs and Class members picked up their tips from Defendants during the following workday at a centralized payroll office in the airport in an envelop that marked the amount of cash tips they were receiving.

27.     At all relevant times, Defendants paid Plaintiffs, FLSA Collective Plaintiffs and Class members entirely in tips and did not compensate them with any hourly base rate. Defendants failed to pay Plaintiffs, FLSA Collective Plaintiffs and Class members for their hours worked, and if they claim a tip credit, Defendants violated the tip credit requirements by claiming a credit beyond the statutory permissible amount and by not paying them at least the prevailing federal and state "tip credit" minimum wage.

28.     Plaintiffs, FLSA Collective Plaintiffs and Class members did not receive any notice that Defendants were claiming a tip credit. In addition, Plaintiffs, FLSA Collective Plaintiffs and Class members did not receive notice informing them that the tips they received must be retained by them except for a valid tip pooling arrangement, or that the tip credit taken by Defendants may not exceed the value of tips that they actually received.

29.     During their employment with Defendants, Plaintiffs were required to engage in various non-tipped activities, such as preparing food, bussing tables and cleaning the

restaurants, for 20 percent or more of their workday. Based on Plaintiffs' direct observations and conversations with other employees, FLSA Collective Plaintiffs and Class members similarly spent at least 20 percent of their workday performing such non-tipped activities.

30. At all relevant times, Plaintiffs, FLSA Collective Plaintiffs and Class members regularly worked over forty (40) hours per week, but Defendants failed to pay them the proper overtime compensation in violation of the FLSA and NYLL.

31. At all times relevant, the workdays of Plaintiffs and Class members regularly exceeded ten (10) hours per day. However, Defendants failed to pay Plaintiffs and Class members the spread of hours premium as required by NYLL.

32. At no time during the relevant time periods did Defendants provide Plaintiffs or Class members with proper wage and hour notices or wage statements as required by NYLL. In fact, during the relevant period, Defendants failed to provide Plaintiffs and Class members with any wage statements.

33. Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage to Plaintiffs, FLSA Collective Plaintiffs and Class members.

34. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs, FLSA Collective Plaintiffs and Class members the federal and state minimum wage for all hours worked, despite failing to satisfy the requirements to claim tip credit.

35. Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA overtime rate (of time and one-half) or the New York State

overtime rate (of time and one-half) to Plaintiffs, FLSA Collective Plaintiffs and Class members for all hours worked in excess of forty (40) hours per week.

36.     Defendants knowingly and willfully operated their business with a policy of not paying the spread of hour premium to Plaintiff and Class members, in violation of the NYLL.

37.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiffs and Class members, in violation of the NYLL.

38.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage and hour notices to Plaintiffs and Class members, at the beginning of employment and annually thereafter, in violation of the NYLL.

39.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class members in this litigation and have agreed to pay the firm a reasonable fee for its services.

40.     In or around November 2014, when Defendants hired Plaintiff MARIANI as a hostess, Defendants told her that she was hired as part of a union and could not be terminated without cause. However, throughout her entire employment with Defendants, Plaintiff MARIANI did not receive a union card or notice of her union rights. Plaintiff MARIANI also did not have to pay any union dues and never received a copy of the union contract nor contact information at the union. There was never any protocol or procedure to complain against Defendants provided to Plaintiff MARIANI from the purported "union." Plaintiff MARIANI believes that she and other class members were wrongfully and illegally classified as union employees to limit their ability to pursue claims against Defendants' wrongdoings.

41.     After Plaintiff MARIANI was terminated, Plaintiff was informed that she was being terminated for being a no-show at work without calling out on November 20, 2015. However, Plaintiff MARIANI had a message from one of her managers telling her that she did not need to work that day. Plaintiff MARIANI believes that Defendants did not have cause to terminate her and that the basis for her termination was fraudulent and wrongful. Defendants wanted to retaliate against Plaintiff for filing a worker's compensation claim and requesting her managers over a prolonged period for a schedule accommodation after her knee surgery.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

42.     Plaintiffs reallege and reaver Paragraphs 1 through 41 of this class and collective action Complaint as if fully set forth herein.

43.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

44.     At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

45.     At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

46.     At all relevent times, Defendants had a policy and practice of failing to pay the statutory minimum wage to Plaintiffs and FLSA Collective Plaintiffs for their hours worked.

47.     At all relevant times, Defendants had a policy and practice of failing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and FLSA Collective Plaintiffs for their hours worked in excess of forty (40) hours per workweek.

48.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs at the statutory minimum wage and overtime premium of time and one-half for their hours worked in excess of forty (40) hours per week when Defendants knew or should have known such was due.

49.     Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

50.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e. double) damages pursuant to the FLSA.

51.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid minimum wage and overtime compensation, plus an equal amount as liquidated damages.

52.     Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs are in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

53.     Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

54.     Plaintiffs reallege and reaver Paragraphs 1 through 53 of this class and collective action Complaint as if fully set forth herein.

55.     At all relevant times, Plaintiffs and Class members were employed by Defendants within the meaning of the New York Labor Law §§ 2 and 651.

56.     Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them the minimum wage required by the New York Labor Law.

57.     Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them the proper overtime compensation at rates of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek.

58.     Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay the spread of hours premium for each workday that exceeded ten (10) hours.

59.     Defendants knowingly and willfully failed to provide proper wage and hour notices, at the date of hiring and annually thereafter, to Plaintiffs and Class members, as required by New York Labor Law § 195(1).

60.     Defendants knowingly and willfully failed to provide proper wage statements to Plaintiffs and Class members with every wage payment, as required by New York Labor Law § 195(3).

61.     Due to Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants their unpaid minimum wage, unpaid

overtime, unpaid spread of hours, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action, pursuant to New York Labor Law.

## COUNT III

### RETALIATION UNDER THE FAIR LABOR STANDARDS ACT

62.    Plaintiff MARIANI realleges and reavers Paragraphs 1 through 61 of this Complaint as fully set forth herein.

63.    Defendants retaliated against Plaintiff MARIANI by terminating her employment with Defendants after she filed for worker's compensation and asked for a schedule accommodation for her knee injury.

64.    Defendants' actions constitute a violation of Section 15(a)(3) of the FLSA. 29 U.S.C. 215 (a)(3).

65.    Plaintiff MARIANI suffered economic loss from the termination of her employment, which was compromised as a result of Defendants' retaliatory actions.

66.    Due to Defendants' retaliation under the FLSA, Plaintiff MARIANI is entitled to recover from Defendants compensatory damages and punitive damages and all other penalties the Court deems appropriate.

## COUNT IV

### RETALIATION UNDER THE NEW YORK LABOR LAW

67.    Plaintiff MARIANI realleges and reavers Paragraphs 1 through 66 of this Complaint as fully set forth herein.

68.     Defendants retaliated against Plaintiff MARIANI by terminating her employment with Defendants after she filed for worker's compensation and asked for a schedule accommodation for her knee injury.

69.     Plaintiff MARIANI suffered economic loss from the  termination of her employment, which was compromised as a result of Defendants' retaliatory actions.

70.     Due to Defendants' retaliation under the NYLL, Plaintiff MARIANI is entitled to recover from Defendants compensatory damages and punitive damages and all other penalties the Court deems appropriate.

## COUNT V

## BREACH OF CONTRACT

71.     Plaintiff MARIANI realleges and reavers Paragraphs 1 through 70 of this Complaint as fully set forth herein.

72.     At all relevant times, Defendants represented to Plaintiff MARIANI that she may only be terminated for cause.

73.     Defendants terminated Plaintiff MARIANI without cause and did not provide Plaintiff with a reason for termination.

74.     Defendants breached their contract with Plaintiff MARIANI by terminating her without cause.

75.     As a result of Defendants' breach, Plaintiff MARIANI suffered economic damages and is entitled to damages in an amount the presently ascertainable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid minimum wage due under the FLSA and NYLL;

d.    An award of unpaid overtime compensation due under the FLSA and NYLL;

e.    An award of unpaid spread of hours due under the New York Labor Law;

f.    An award of compensatory damages, punitive damages and all other penalties the Court deems appropriate as a result of Defendants' willful retaliatory conduct;

g.    An award of statutory penalties as a result of Defendants' failure to comply with the New York Labor Law wage notice and wage statement requirements;

h.    An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation and minimum wage pursuant to the FLSA;

i.    An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation and minimum wage pursuant to the New York Labor Law;

j.    An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

k.  Designation of Plaintiffs as Representative of the FLSA Collective Plaintiffs;

l.  Designation of this action as a class action pursuant to F.R.C.P. 23;

m.  Designation of Plaintiffs as Representative of the Class; and

n.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.


Dated:  April 12, 2016                  Respectfully submitted,

                             By:  */s/ C.K. Lee*_____
                                  C.K. Lee, Esq.

                                  LEE LITIGATION GROUP, PLLC
                                  C.K. Lee (CL 4086)
                                  Anne Seelig (AS 3976)
                                  30 East 39th Street, Second Floor
                                  New York, NY 10016
                                  Tel.: (212) 465-1188
                                  Fax: (212) 465-1181
                                  *Attorneys for Plaintiffs, FLSA Collective Plaintiffs and the Class*