UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JENIE MARIANI et al, on behalf of herself, and
other similarly situated,

                                              Plaintiff,

      - against -

OTG MANAGEMENT, INC. and
LAGUARDIA USA LLC,

                                       Defendants.
--------------------------------------------------------X

**MEMORANDUM
AND  ORDER**
16 CV 01751 (CLP)

**POLLAK**, United States Magistrate Judge:

On April 12, 2016, Jenie Mariani ("plaintiff"), on behalf of herself and all other similarly

situated non-exempt employees, filed this action against OTG Management, Inc. ("OTG") and

LaGuardia USA LLC (collectively "defendants"), seeking unpaid minimum wages, unpaid

overtime compensation, compensation for retaliation, liquidated damages, and attorneys' fees

and costs under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206(a), 207(a), and 216(b)

and New York Labor Law ("NYLL") § 195.  Plaintiff also alleges claims for unpaid spread of

hours premium and statutory penalties under the NYLL.  In addition, the Complaint alleges

violations of the requirements to provide wage notices and accurate wage statements under

Sections 195(1) and 195(3) of the NYLL.

On November 21, 2016, the Court granted plaintiff's  motion for conditional certification

and the circulation of the proposed Notice.  On January 24, 2017, the parties consented to proceed

before the undersigned for all further proceedings.

Currently pending before this Court is plaintiff's motion for preliminary approval of the

class settlement filed on March 13, 2017.

FACTUAL BACKGROUND

Plaintiff filed this action on behalf of all non-exempt tipped employees who were employed at three different eateries within Terminal C of LaGuardia Airport: 1) Cotto, 2) Wibar, and 3) Voyage Bakery & Café (collectively, "the Restaurants") during the six year period prior to the filing of the Complaint. (Pl.'s Mem.[1] at 1). Plaintiff alleges that Cotto, Wibar, and Voyage Bakery & Café ("Voyage") are part of an integrated restaurant and retail chain that defendants jointly operate. (Id. at 2). Plaintiff claims that she was a non-exempt tipped employee, who was employed as a hostess at Cotto in or around November 2014. (Mariani Decl.[2] ¶ 1). She was promoted to the position of a server at Cotto in or around May 2015, and she worked continuously thereafter as a server and occasionally as a bartender, as needed throughout the three Restaurants, until she was terminated in or around December 2015. (Mariani Decl. ¶ 1; Pl.'s Mem. at 13). Plaintiff alleges that throughout her employment, she worked shifts that lasted ten (10) or more hours per day. (Mariani Decl. ¶ 6). Plaintiff claims that she worked about thirty-five (35) hours per week, although she also states that from June through November 2015, she worked an average of forty-three (43) hours per week. (Id. ¶ 5).

At all relevant times, defendants employed a General Manager, Martin de Durana, who managed the Restaurants and utilized assistant managers to directly supervise employees. (Id. ¶ 3). Employees from all three Restaurants were provided with the same training manual and "were interchangeable" among the Restaurants. (Id. ¶ 4). Plaintiff alleges that throughout her

---

[1]Citations to "Pl.'s Mem." refer to the Memorandum of Law in Support of Plaintiff's Motion for Conditional Collective Certification, filed on July 29, 2016.

[2]Citations to "Mariani Decl." refer to the Declaration of Jenie Mariani, filed on July 29, 2016.

employment, she was not paid any hourly or overtime wages; she was only paid in daily tips from the tip pool.  (Id. ¶¶ 4, 7, 10, 13).  She additionally alleges that defendants claimed an invalid tip credit allowance and therefore failed to pay the proper minimum wage.[3]  (Pl.'s Mem. at 10).  Plaintiff states that she was paid in cash, never paid overtime for hours worked over 40 in any workweek, and never paid a spread-of-hours premium.  (Mariani Decl. ¶¶ 9, 10, 12).

Plaintiff also alleges that all non-exempt tipped employees at the Restaurants were subject to the same wage and hour conditions that she experienced.  (Pl.'s Mem. at 13).  Through her work at all Restaurants, she personally observed other non-exempt tipped employees at the Restaurants who were subject to the same policies and who were also included in the same tip pool.  (Mariani Decl. ¶¶ 4, 7, 13).  According to plaintiff, employees were not informed as to how tips would be allocated and never agreed to a tip pool.  (Id. ¶ 7).  Plaintiff also alleges that she and other non-exempt tipped employees received fraudulent pay notices that "inaccurately stated that I could receive a base pay," which, plaintiff alleges, she never received.  (Id. ¶ 11).

On July 29, 2016, plaintiff submitted a motion for conditional certification of an FLSA collective action, seeking to certify a collective action for all non-exempt employees who were employed at the Restaurants in the last six years.  (Pl.'s Mem. at 1-2).  Defendants raised several objections to the certification motion, arguing that not only did they comply with the wage and hour laws, but also that the practices complained of did not apply across the Restaurants.  In addition,

---

[3]A tip credit allowance of $5.12 per hour is the maximum amount of money from tips that an employer may legally count against the hourly wage an employee is earning, effective May 5, 2011. U.S. Dept. of Labor, Wage and Hour Division, Fact Sheet #15 Tipped Employees under the Fair Labor and Standards Act (2013), https://www.dol.gov/whd/regs/compliance/whdfs15.pdf.  Plaintiff alleges that more than the statutorily permissible amount of her hourly wage was based on tips in the employee tip pool. (Pl.'s Mem. at 10-11).

3

defendants sought to amend plaintiff's proposed Notice on the grounds that it should be limited to tipped servers and bartenders working at the Restaurants for the last two years.

On November 21, 2016, the Court granted plaintiff's motion for conditional certification of the FLSA collective action and approved the proposed Notice and Consent Form. Plaintiff was directed to amend the Notice and Consent Form to include defendants' counsel's contact information and information requiring opt-ins to send consent forms to the Clerk of Court.

Thereafter, the parties notified the Court that they had reached a proposed settlement on behalf of the entire class. On March 13, 2017, plaintiff, on behalf of both parties, filed a motion for preliminary approval of the proposed class settlement and for a conditional certification of a Rule 23 Class for settlement purposes.

For the reasons stated herein, the Court grants the motion for preliminary approval of the class settlement and for conditional certification of a Rule 23 Class for settlement purposes.


DISCUSSION

I. Preliminary Approval of the Class Settlement

The parties seek preliminary approval of the proposed settlement, as memorialized in the Settlement Agreement. The Settlement Agreement requires defendants to fund a $300,000 settlement fund (the "Settlement Fund"). (Mem.[4] at 14). Attorney's fees in the amount of one-third of the Settlement Fund, approximately $100,000, will be deducted from the award;

---

[4]Citations to "Mem." refer to the Memorandum of Law in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiff's Counsel as Class Counsel, and Approval of Plaintiff's Proposed Notice of Settlement filed on March 13, 2017.

plaintiff's counsel also seeks "reimbursement of reasonable litigation costs and expenses from the fund." (Id. at 4). A service award will be paid from the Fund to the named plaintiff in the amount of $5,000, as well as a release payment of $10,000 for the named plaintiff's global general release of claims. (Id. at 5). Claims Administrator's fees in the amount of $25,000 will also be deducted from the Settlement Fund, and what remains of the award after these deductions will be apportioned to class members based on the number of weeks worked during the relevant period. (Id.) The settlement is intended to encompass the NYLL and FLSA claims of the named plaintiff, Jenie Mariani, and the class members. (Id. at 1).

A. Standards

To grant preliminary approval of a class settlement under Rule 23(e), the Court must determine that the proposed settlement is "fair, adequate, and reasonable, and not the product of collusion." Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000) (citations omitted); see Fed. R. Civ. P. 23(e). Judicial policy favors the settlement and compromise of class actions. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116-17 (2d Cir. 2005); see also In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004). Whether a settlement is fair is a determination within the sound discretion of the court. Levitt v. Rodgers, 257 F. App'x 450, 453 (2d Cir. 2007) (citing In re Ivan F. Boesky Sec. Litig., 948 F.2d 1358, 1368 (2d Cir. 1991)).

Generally, approval of a class action settlement involves a two-step process. First, the court preliminarily approves the proposed settlement by evaluating the written submissions and informal presentation of the settling parties and the negotiating process leading to the settlement, Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 116. Second, the court holds a fairness

hearing to "determine whether the settlement's terms are fair, adequate, and reasonable . . . ."
Capsolas v. Pasta Res., Inc., No. 10 CV 5595, 2012 WL 4760910, at *4 (E.D.N.Y. Oct. 5, 2012).
In evaluating a proposed settlement in order to grant preliminary approval, the court need only
find that there is "probable cause" to submit the settlement to the class members and to hold a
fairness hearing.  Hernandez v. Merrill Lynch & Co., No. 11 CV 8471, 2012 WL 5862749, at *1
(S.D.N.Y. Nov. 15, 2012) (quoting In re Traffic Exec. Ass'n E. R.Rs., 627 F.2d 631, 634 (2d Cir.
1980)).

       In City of Detroit v. Grinnell Corp., the Second Circuit enumerated nine factors to guide
courts in evaluating the substantive fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation; (2)
> the reaction of the class to the settlement; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the risks of
> establishing liability; (5) the risks of establishing damages; (6) the
> risks of maintaining the class action through the trial; (7) the ability
> of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the Settlement Fund in light of the best possible
> recovery; and (9) the range of reasonableness of the Settlement Fund
> to a possible recovery in light of all the attendant risks of litigation[.]

495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), abrogated on other grounds,
Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000); see also D'Amato v. Deutsche
Bank, 236 F.3d 78, 86 (2d Cir. 2001); Garcia v. Pancho Villa's of Huntington Village, No. 09
CV 486, 2012 WL 5305694, at *4 (E.D.N.Y. Oct. 4, 2012).

       The court must also determine if the settlement was "achieved through arms-length
negotiations by counsel with the experience and ability to effectively represent the class's
interests."  Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999) (citing
Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982)); see also D'Amato v. Deutsche Bank,

236 F.3d at 85 (noting that the district court must "determine a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms"); In re Nissan Radiator/Transmission Cooler Litig., No. 10 CV 7493, 2013 WL 4080946, at *4 (S.D.N.Y. May 30, 2013).  In reviewing a proposed settlement, the court has the "'fiduciary responsibility of ensuring that the settlement is . . . not a product of collusion, and that the class members' interests [were] represented adequately.'"  Clement v. Am. Honda Fin. Corp., 176 F.R.D. 15, 29 (D. Conn. 1997) (internal citation omitted) (quoting In re Warner Commc'ns Secs. Litig., 798 F.2d 35, 37 (2d Cir. 1986)).

Although the Court is not required to make a finding of fairness as to the underlying settlement at this time, the Grinnell factors are instructive in determining whether to grant preliminary approval of the settlement.  See Torres v. Gristede's Operating Corp., Nos. 04 CV 3316, 08 CV 8531, 08 CV 9627, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (noting that "[p]reliminary approval of a Settlement Agreement requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties") (internal quotation marks and citations omitted).

B.  Analysis of Procedural Fairness

 The parties represent that the proposed settlement was entered into only after plaintiff's counsel "conducted a thorough investigation" in which counsel researched and assessed the "underlying merits of the class claims, the likelihood of obtaining liquidated damages, the proper

7

measure of damages, and the likelihood of class certification." (Lee Decl.[5] ¶ 13). Counsel "conducted in-depth interviews with plaintiff" and obtained and reviewed documents pertaining to the claim, including employment records provided by defendants and other documents provided by plaintiff. (Mem. at 2; Lee Decl. ¶ 14 ). Following discovery, plaintiff filed for conditional collective certification on September 9, 2016. (Mem. at 2). The Court granted plaintiff's motion for conditional collective certification on November 21, 2016, and the parties "agreed to engage in a dialogue" about resolving the claims. (Mem. at 2; Nov. 21, 2016 Order). The parties agreed to exchange "class-related information and payroll data" and subsequently "engage in mediation." (Mem. at 2).

The parties engaged in arms-length settlement negotiations through a private mediation overseen by mediator Carol A. Wittenburg. (Mem. at 3). The parties state that on January 23, 2017, they attended an all-day mediation session during which they were able to reach a settlement in principle. (Mem. at 3; Lee Decl. ¶¶ 19-21). Following the January 23rd meeting, the parties "continued negotiating the terms of the class settlement" which have since been memorialized in the Settlement Agreement and Release. (Mem. at 3; Lee Decl. ¶ 20). Given the presumption of fairness when a class settlement has been reached after "arm's-length negotiations between experienced, capable counsel after meaningful discovery," see Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 116, the Court finds that the process of reaching the proposed settlement in this case was procedurally fair.

---

[5] Citations to "Lee Declaration" refer to the Declaration of C.K. Lee in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiff's Counsel as Class Counsel, and Approval of Plaintiff's Proposed Notice of Settlement, dated March 13, 2017.

C.  Analysis of Substantive Fairness

1.  Complexity, Expense, and Likely Duration of the Litigation

Turning to the Grinnell factors, the parties seek "to avoid [the] significant expense and delay" that would result from continuing litigation.  (Mem. at 3; Lee Decl. ¶¶ 19-21).  Plaintiff claims that continued litigation would require additional discovery, including multiple depositions.  (Mem. at 9).  Plaintiff further notes that "most class actions are inherently complex" and preparation for trial and the trial itself would require "tremendous amounts of time and resources."  (Id.)  Accordingly, the parties believe that this settlement allows for resolution of the claims in a "prompt and efficient manner."  (Id.)  Thus, the first Grinnell factor of avoiding potential protracted litigation favors settlement.

2.  Reaction of Class to Settlement

The reaction of the Class to the settlement may only be evaluated after notice of the proposed Settlement Agreement has been sent to the Class and the time for objections has passed.  In this case, notice of the proposed settlement has not yet been distributed to the Class. (Id.)  However, plaintiff "has expressed her approval of the settlement" and, moreover, believes that her fellow class members will similarly find the settlement to be fair, reasonable, and favorable.  (Id.)

3.  Stage of Proceedings and Amount of Discovery Completed

The parties believe they have adequately evaluated the merits of the case and completed a sufficient amount of discovery to warrant settlement.  (Id. at 10).  Plaintiff has obtained "substantial amounts of data" pertaining to the claims, including records which provide employee information and "sample wage and hour records . . . for the relevant period."  (Id.)  The parties

9

have engaged in months of litigation and negotiations, and as such are "well-equipped to evaluate the strengths and weaknesses of the case." (Id.)  The parties attended a day-long mediation session overseen by a neutral third-party, Carol A. Wittenberg of JAMS, in which they argued "their respective claims and defenses" and negotiated a settlement in a cooperative and non-collusive manner.  (Id. at 10, 11).  When discovery has been extensive, and counsel has sufficient information to appreciate the merits of the case, then settlement is favored.  Tiro v. Public House Investments, LLC, No. 11 CV 7679, 2013 WL 4830949, at *7 (S.D.N.Y. Sept. 10, 2013); In re Warfarin Sodium Antitrust Litig., 391 F.3d at 537.  Given the extent of discovery conducted in this case and the time spent between the parties negotiating the settlement, the Court finds that this factor favors approval of the proposed settlement.

        4.  Establishing Liability and Damages and Maintaining the Action Through Trial

The risk of establishing liability also favors settling this dispute.  Although plaintiff "believes she could ultimately establish both liability and damages," continuing litigation through trial inherently involves risk and uncertainty.  (Id. at 11).  A trial on the merits would involve "resolution of liability issues" and likely an appeals process, both of which pose risk and uncertainty with respect to outcome and duration.  (Id.)  Accordingly, the proposed settlement seeks to alleviate these risks.  (Id.)  In light of the foregoing, considering the risks of appeal and the prolonged nature of the litigation, the Court finds that this factor favors approval of the proposed settlement.

        5.  Maintaining the Class Through Trial

Plaintiff acknowledges that there is a risk associated with obtaining and maintaining class certification through trial.  (Id. at 12).  If plaintiff were to move for class certification, defendants

would likely oppose the motion and/or move for decertification and/or "seek permission to file

an interlocutory appeal" in the event the Court grants conditional certification.  (Id.)  This

process "would require extensive briefing" by both parties and inherently involves risk, expense,

and delay.  (Id.)  Since the proposed settlement would eliminate the aforementioned risk,

expense, and delay, the Court finds that this factor favors approval.

      6.  <u>Ability of Defendants to Withstand A Greater Judgment</u>

      The parties acknowledge that defendants "may be able to withstand a greater judgment."

(Id.)  However, the parties contend that this alone should not preclude the Court from finding that

the settlement is fair.  (Id.); <u>see</u> <u>Frank v. Eastman Kodak Co.</u>, 228 F.R.D. 174, 186 (W.D.N.Y.

2005); <u>In re Austrian & German Bank Holocaust Litig.</u>, 80 F. Supp. 2d 164, 178 (S.D.N.Y.

2000), <u>aff'd sub nom.</u> <u>D'Amato v. Deutsche Bank</u>, 236 F.3d 78.  Even if defendants could

withstand a greater judgment, plaintiff argues that the Settlement Agreement "eliminates the risk

of collection" insofar as it requires defendants to fund the Settlement Fund by March 27, 2017.

(Id.)  Accordingly, the Court finds that this factor also weighs in favor approval of the proposed

settlement.

      7.  <u>Range of Reasonableness of Settlement Fund</u>

      The Settlement Agreement provides that defendants will pay "a substantial amount."

(Id.)  Although plaintiff acknowledges that it is possible that plaintiff could recover a greater

amount at trial, plaintiff also recognizes the inherent risks of trial.  (Id. at 13).  Plaintiff believes

that in the "best case scenario," total recovery "would be, at most, approximately $1.2 million"

for the class.  (Id.)  The $300,000 Settlement Fund thus represents a 25% recovery, which

plaintiff says "is reasonable."  (Id.)  "It is well-settled law that a cash settlement amounting to

only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." Johnson v. Brennan, No. 10 CV 4712, 2011 WL 4357376, at *11 (S.D.N.Y. Sept. 16, 2011) (quoting Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982)). When the proposed settlement provides a meaningful benefit to the class when considered against the obstacles to proving plaintiff's claims with respect to damages in particular, the agreement is reasonable. See In re MetLife Demutualization Litig., 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010).

Even absent the risk of establishing damages at trial, the value of the Settlement Fund justifies settling this case. Under the Settlement Agreement, class members will each receive their proportionate share (based on the number of weeks worked during the relevant period) of what remains after deducting from the $300,000 total award an award for attorneys' fees of approximately $100,000, plus reimbursement for litigation costs and expenses, a service award to the named plaintiff of $5,000, with an additional $10,000 for the named plaintiff's global general release of claims, and the Claims Administrator's fees of $25,000. (Id. at 14). The Court finds that the total award, including the deductions for administrative costs and attorney's fees, is fair and reasonable.

On the basis of the foregoing discussion of the Grinnell factors, the Court finds that the proposed settlement be deemed fair and reasonable under the circumstances present in this case.


II.  Conditional Certification of the Class

Plaintiff moves pursuant to Fed. R. Civ. P. 23 for conditional certification, for purposes of settlement, of a class consisting of all current and former employees of OTG Management and

its subsidiaries and affiliates who worked as non-exempt, hourly tipped employees at any point

between October 22, 2015 and January 23, 2017.

A.  The Requirements of Rule 23(a)

Rule 23(a) of the Federal Rules of Civil Procedure governs class certification, providing:

> One or more members of a class may sue or be sued as
> representative parties on behalf of all members only if:  (1) the class
> is so numerous that joinder of all members is impracticable; (2) there
> are questions of law or fact common to the class; (3) the claims or
> defenses of the representative parties are typical of the claims or
> defenses of the class; and (4) the representative parties will fairly and
> adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to satisfying these prerequisites, plaintiff must also satisfy one of the three

subdivisions of Rule 23(b):  (1) that separate actions pose a risk of inconsistent adjudications or

would substantially impair the ability of other individuals to protect their interests; (2) injunctive

or declaratory relief is sought concerning the class as a whole; or (3) common questions of law or

fact predominate over individual questions and a class action is superior to other methods for

bringing suit.  Fed. R. Civ. P. 23(b).  See generally Amchem Prods., Inc. v. Windsor, 521 U.S.

591 (1997).  It is plaintiff's burden to establish compliance with the requirements of Rule 23, but

in analyzing the issue of certification, the court accepts as true the allegations in the complaint

regarding the merits of the claim.  See D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. 451, 454

(E.D.N.Y. 1996) (citation omitted).  Pursuant to Rule 23(c)(1) of the Federal Rules of Civil

Procedure, "the court can make a conditional determination of whether an action should be

maintained as a class action, subject to final approval at a later date."  Collier v. Montgomery

Cnty. Hous. Auth., 192 F.R.D. 176, 181 (E.D. Pa. 2000).

For purposes of settlement only, defendants do not oppose conditional certification. (Mem. at 14 (citing Newberg on Class Actions § 11.27 (4th ed. 2002) (stating that "when the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only"))); see County of Suffolk v. Long Island Lighting Co., 710 F. Supp. 1407, 1422-1424 (E.D.N.Y. 1989) (holding that it is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to class certification), aff'd in part, rev'd in part on other grounds, 907 F.2d 1295 (2d Cir. 1990).

### 1. Numerosity

Turning to the Rule 23(a) factors, the court may certify a class only if the class is so numerous that joinder becomes impractical. Fed. R. Civ. P. 23(a)(1). The standard for presuming numerosity is 40 or more members. Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). In this case, the class consists of 345 class members and thus satisfies the numerosity requirement. (Lee Decl. ¶ 28). Factors such as the inconvenience of trying individual actions, as well as the financial resources of potential class members, weigh heavily in favor of a class action in this case. See Savino v. Comput. Credit, Inc., 173 F.R.D. 346, 351 (E.D.N.Y. 1997), aff'd 164 F.3d 81 (2d Cir. 1998). Accordingly, the Court finds that the requirement of numerosity has been satisfied.

### 2. Commonality

In order to satisfy the second prong of Rule 23(a), plaintiff must show that the claims of the potential class members share common questions of law or fact. Fed. R. Civ. P. 23(a)(2).

Rule 23 does not require that "'all questions of law or fact raised be common.'"  Savino v. Comput. Credit, Inc., 173 F.R.D. at 352 (quoting Halford v. Goodyear Tire & Rubber Co., 161 F.R.D. at 18); Frank v. Eastman Kodak Co., 228 F.R.D. at 181 (holding that the claims need not be identical to satisfy the commonality requirement, but they must share common questions of law or fact).  There must be a "unifying thread" among the claims to warrant class certification.  Kamean v. Local 363, Int'l Bhd. of Teamsters, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  As long as "common questions . . . predominate," any differences in the circumstances raised by individual members will not defeat the requirement of commonality.  In re Sadia, S.A. Sec. Litig., 269 F.R.D. 298, 304 (S.D.N.Y. 2010).  In other words, "there need only be a single issue common to all members of the class," as the "critical inquiry is whether the common questions lay at the 'core' of the cause of action alleged."  Savino v. Comput. Credit, Inc., 173 F.R.D. at 352.

In this case, several common factual and legal issues exist.  (Mem. at 15-16).  Plaintiff alleges that the following claims against defendants affected her and the class members in the same way:  (1) defendants failed to pay proper minimum wages to tipped employees because they took a tip credit to which they were not entitled; (2) defendants failed to pay proper overtime; (3) defendants failed to pay "spread of hours" pay; and (4) defendants failed to meet NYLL Section 195(1) and 195(3)'s requirements on wage statements and wage and hour notices.  (Mem. at 17).  As such, the Court finds that there are common legal and factual issues sufficient to satisfy the requirements of Rule 23(a)(2).

### 3.  Typicality

Rule 23(a)(3) requires that plaintiff's claims be typical of the claims of the class.  Typicality has been found "when each class member's claim arises from the same course of

events and each class member makes similar legal arguments to prove the defendants liability."

Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993).  Typicality is "usually met irrespective of

varying fact patterns which underlie individual claims" so long as the claims of the class

representative are typical of the class members' claims.  Bourlas v. Davis Law Assocs., 237

F.R.D. 345, 351 (E.D.N.Y. 2006) (quoting D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. at

456-57).

 In this case, plaintiff's claims arise from the same factual and legal circumstances that

form the bases of the class members' claims.  (Mem. at 17).  First, plaintiff and the class

members allege that defendants failed to pay them overtime, "spread of hours" pay, and proper

minimum wages due to an invalid tip credit.  (Id.)  Second, they allege that, under defendants'

corporate policies, defendants did not provide wage notices at the time of hire or wage statements

listing the amount of tip credit allowance taken for each payment period as required by the

NYLL.  (Id, at 16-17 (citing Hernandez v. Merrill Lynch & Co., 2012 WL 5862749 at *3)).

Despite differences in the amounts of overtime, spread of hours, or wage statement damages

owed, plaintiff's claims and the claims of the class members all stem from defendants' alleged

uniformly wrongful conduct. Plaintiff's claims are therefore sufficiently typical to warrant

certification.

   4.  Adequacy of Representation

 In order to satisfy Rule 23(a)(4), which requires the interests of the class to be adequately

represented, the Second Circuit has established a two-prong test.  In re Drexel Burnham Lambert

Grp., 960 F.2d 285, 291 (2d Cir. 1992).  First, there must be a showing that class counsel is

"'qualified, experienced and generally able' to conduct the litigation."  Halford v. Goodyear Tire

& Rubber Co., 161 F.R.D. 13, 19 (W.D.N.Y. 1995) (quoting Eisen v. Carlisle & Jacquelin, 391

F.2d 555, 562 (2d Cir. 1968), vacated on other grounds, 417 U.S. 156 (1974)).  Second,

plaintiff's and the class members' interests may not be "'antagonistic'" to one another.  County

of Suffolk v. Long Island Lighting Co., 710 F. Supp. at 1413.

Plaintiff claims that there is no evidence to suggest that "plaintiff's and class members'

interests are at odds."  (Mem. at 18).  Additionally, plaintiff's counsel represents that he has

extensive experience as "lead counsel in several wage and hour cases that district courts have

certified as class actions and/or collective actions."  (Lee Decl. ¶ 7).  Counsel contends that the

Court has on multiple occasions deemed Lee Litigation Group "to be adequate class counsel in

wage and hour class actions."  (Id. ¶ 8).  Indeed, plaintiff's counsel claim that they meet the

adequacy requirement per Rule 23(a)(4).  (Mem. at 18).  Based on the nature of plaintiff's claims

and based on counsel's representation that no conflict of interest exists, the Court finds that

plaintiff's claims are sufficiently interrelated with those of the class members and that plaintiff

will serve as an adequate class representative.

B.  The Requirements of Rule 23(b)(3)

1.  Common Questions Predominate Over Individual Issues

Plaintiff must also establish that the proposed class meets the requirements of Fed. R.

Civ. P. 23(b)(3).  Under Rule 23(b)(3), a proposed class must be sufficiently cohesive and

common issues must predominate in order to warrant adjudication as a class.  Amchem Prods,

Inc. v. Windsor, 521 U.S. at 623.  Courts focus on whether there are common questions related to

liability.  See Smilow v. Southwest Bell Mobile Sys. Inc., 323 F.3d 32, 40 (1st Cir. 2003);

Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 372-73 (S.D.N.Y. 2007).  Even if there

are defenses that affect class members differently, that alone "does not compel a finding that

individual issues predominate over common ones."  In re Visa Check/MasterMoney Antitrust

Litig., 280 F.3d 124, 138 (2d Cir. 2001) (quoting Waste Mgmt. Holdings, Inc. v. Mowbray, 208

F.3d 288, 296 (1st Cir. 2000)), overruled on other grounds, In re IPO Secs. Litig., 471 F.3d 24

(2d Cir. 2006).

In this case, plaintiff alleges that she and the class members were governed by uniform,

unlawful pay policies and procedures which, plaintiff claims, violated New York law.  (Mem. at

19).  Plaintiff further argues that "[t]hese common issues predominate over any issues affecting

only individual class members."  (Id.)  Thus, the Court finds that common questions predominate

in this case and plaintiff therefore satisfies Rule 23(b)(3).

### 2. Class Action as Superior Method of Resolution

Additionally, to satisfy Rule 23(b)(3), plaintiff must demonstrate that "a class action

would achieve economies of time, effort, and expense, and promote uniformity of decision as to

persons similarly situated, without sacrificing procedural fairness or bringing about other

undesirable results."  Brown v. Kelly, 609 F.3d 467, 483 (2d Cir. 2010) (citation and internal

quotation marks omitted).  The Rule requires the Court to consider:

> [(1)] the class members' interests in individually controlling the
> prosecution or defense of separate actions; [(2)] the extent and nature
> of any litigation concerning the controversy already begun by or
> against class members; [(3)] the desirability or undesirability of
> concentrating the litigation of the claims in the particular forum; and
> [(4)] the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

In this case, plaintiff claims that because "much of the alleged wrongful conduct occurred within" the jurisdiction of this Court, concentrating litigation in this Court is desirable. (Mem. at 20). Moreover, proceeding as a class action will achieve economies of scale for the class members and preserve judicial resources by consolidating common issues of fact and law, and preserve public confidence in the system by avoiding inconsistent adjudications. (Id. (citing cases)). Furthermore, in this case, there is no indication that the class members desire to control their own cases.

As a result, the Court accepts that a class action is the superior method of resolution in this case.

### 3. Class Certification

In light of the foregoing, the Court finds that plaintiff has satisfied the requirements of Rule 23(b)(3) and hereby grants conditional certification of the class for the purposes of settlement. Pursuant to that provision, the Court Orders that a class, consisting of all current and former employees of OTG Management and its subsidiaries and affiliates who worked as non-exempt, hourly tipped employees at any point between October 22, 2015 and January 23, 2017, be certified for settlement purposes only,

### III. Appointment of the Class Counsel

The Court also grants plaintiff's counsel's motion to be appointed as Class Counsel. In evaluating the adequacy of Class Counsel, Rule 23(g) requires the Court to consider: (1) the work done by counsel in investigating the potential claims in the case; (2) counsel's experience in handling similar class actions and other complicated litigation; (3) counsel's knowledge of the

applicable law; and (4) the resources counsel will expend to represent the class.  Fed. R. Civ. P.

23(g).  In this case, Lee Litigation Groups has extensive experience litigating and settling wage

and hour cases and other employment cases, and thus they are well-versed in the applicable law.

(Lee Decl. ¶¶ 7, 8).  Moreover, plaintiff's counsel has performed substantial work in this

litigation, identifying, investigating, prosecuting, and settling the claims on behalf of the affected

individuals.  (Id.)

 Accordingly, the Court finds that proposed Class Counsel satisfy the criteria of Rule

23(g), and appoints the firm Lee Litigation Group as Class Counsel to represent the class

members in this matter.


IV.  Adequacy of Notice

 Pursuant to the Federal Rules of Civil Procedure, the "court must direct notice in a

reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P.

23(e)(1).  Under Rule 23(e)(1), the "'[c]ourt has virtually complete discretion as to the manner of

giving notice to class members.'"  In re MetLife Demutualization Litig., 689 F. Supp. 2d at 345

(quoting Handschu v. Special Servs. Div., 787 F.2d 828, 833 (2d Cir. 1986)).  In a Rule 23(b)(3)

class action such as this, "the best notice that is practicable under the circumstances, including

individual notice to all members who can be identified through reasonable effort" must be

provided to the class.  Fed. R. Civ. P. 23(c)(2)(B).[6]  In Eisen v. Carlisle & Jacquelin, the Supreme

---

 [6]The Rule further provides that, for any class certified under Rule 23(b)(3), the notice
must "concisely and clearly state . . . (i) the nature of the action; (ii) the definition of the class
certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an
appearance through an attorney if the member so desires; (v) that the court will exclude from the
class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and

Court held that individual notice, as opposed to general published notice, is required by Rule

23(c)(2) for class members who are identifiable through reasonable effort.  417 U.S. at 173-76

(holding that "individual notice to identifiable class members is not a discretionary

consideration" but rather, is an "unambiguous requirement of Rule 23"); Becher v. Long Island

Lighting Co., 64 F. Supp. 2d at 177.  Notice is adequate if it "'fairly apprise[s] the prospective

members of the class of the terms of the proposed settlement and of the options that are open to

them in connection with the proceedings.'"  Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d

at 114 (quoting Weinberger v. Kenrick, 698 F.2d at 70).

 Here, the proposed Notice of Class Action Settlement provides the following

information:  (1) an explanation of who is entitled to a settlement award; (2) a brief contextual

background to this lawsuit; (3) a summary of legal rights and options; (4) an explanation of the

purpose of the Notice; (5) identifying information for Class Counsel; (6) an explanation of the

benefits of settlement; (7) an overview of how each members' settlement amount will be

calculated; (8) an overview of the process for obtaining a copy of the Settlement Agreement,

which contains the allocation formula and other important information; (9) an overview of

attorneys' fees, expenses, and the award that will be paid to the class representative; (10) the

result if the Court approves or does not approve the Settlement Agreement; (11) an explanation

of the Fairness Hearing, a blank space to specify the date and time of the hearing and the location

of the hearing; (12) an overview of an individual's options regarding the Settlement Agreement;

and (13) additional contact information for the Settlement Administrator should a recipient of the

---

(vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P.
23(c)(2)(B).

notice have any questions.  (See Lee Decl. Ex. A, Settlement Agreement).  Defendants do not dispute the contents of the Notice or Consent Form.  (Mem. at 2).

In this case, the Settlement Agreement provides that the Claims Administrator will mail the Notice to the last known address of each class member within 30 days of the Court's Order granting preliminary approval.  (Mem. at 23; see Lee Decl. Ex. A, Settlement Agreement ¶ 3.4(B)).  The Claims Administrator will take reasonable steps to obtain the correct address of any class members for whom notices are returned as undeliverable.  (See Lee Decl. Ex. A, Settlement Agreement ¶ 3.5(A)).  Class members will have 45 days from the date of mailing the Notices to submit claim forms, opt-out requests, or to comment on, or object to the settlement. (See Lee Decl. Ex. A, Settlement Agreement ¶ 3.5(A)).

The Court finds the proposed Notice and this means of notification to be sufficient pending the inclusion of contact information for Class Counsel in the form of a phone number or email.  The proposed Notice itself is sufficiently detailed so as to inform the class members of their rights and obligations, and the method of notice is practical and likely effective in reaching the affected individuals.  See Weinberger v. Kendrick, 698 F.2d at 72 (stating that mailing individual notices to class members at their last known addresses was a sufficient means of notification under the circumstances).  As such, the Court approves the Proposed Notice, provided that it include contact information for Class Counsel, specifically, an address and phone number for Class Counsel. The Court also approves the proposed Consent Form.  (See Lee Decl. Ex. A, Settlement Agreement ¶ 3.4(B)).

22

<u>CONCLUSION</u>

Accordingly, for the reasons stated above, the Court grants plaintiff's motion for preliminary approval of the proposed settlement as articulated in the Settlement Agreement and certification of the class for the purposes of settlement. The Court further approves: (1) Lee Litigation Group's request to be appointed as Class Counsel; (2) the proposed Consent Form; and (3) the proposed Notice, provided it is amended to include contact information for Class Counsel, specifically, an address and phone number for Class Counsel.

A hearing on the final approval of the class settlement has been set for **September 27, 2017 at 10:00 AM.**

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      July 25, 2017

/s/ Cheryl L. Pollak

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

23