UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JENIE MARIANI et al, on behalf of herself, and
other similarly situated,

                                    **MEMORANDUM**
                                    **AND ORDER**
                Plaintiff,            16 CV 01751 (CLP)

    - against -

OTG MANAGEMENT, INC. and
LAGUARDIA USA LLC,

                Defendants.
--------------------------------------------------------X

**POLLAK**, United States Magistrate Judge:

      On April 12, 2016, Jenie Mariani ("plaintiff"), on behalf of herself and all other similarly

situated non-exempt employees, filed this action against OTG Management, Inc. ("OTG") and

LaGuardia USA LLC (collectively "defendants"), seeking unpaid minimum wages, unpaid

overtime compensation, compensation for retaliation, liquidated damages, and attorneys' fees

and costs under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206(a), 207(a), and 216(b) and

New York Labor Law ("NYLL") § 195.   The Complaint also included claims under the NYLL for

unpaid spread of hours premium, and violations of the requirements to provide wage notices and

accurate wage statements.[1]

      On March 13, 2017, plaintiff, on behalf of both parties, filed a motion for preliminary

approval of class action settlement, conditional certification of the settlement class, appointment of

plaintiff's counsel as class counsel, and approval of plaintiff's proposed notice of settlement.   On

July 25, 2017, the Court granted preliminary approval of the parties' proposed settlement and

directed that notice be sent to the class members.

      Currently pending before this Court is plaintiff's motion for certification of the settlement

---

[1] On January 24, 2017, the parties consented to proceed before the undersigned for all further proceedings.

class, final approval of the class action settlement, approval of the FLSA settlement, plaintiff's motion for approval of attorney's fees and reimbursement of expenses, and plaintiff's motion for service award and release payment, all filed October 9, 2017.   On November 7, 2017, the Court held a fairness hearing to determine whether to recommend approval of the proposed settlement, the terms of which are set forth in a Settlement Agreement (the "Settlement" or "Agreement").

For the reasons set forth below, the Court grants plaintiff's motion for certification of the class for the purposes of settlement, and grants final approval of the settlement as articulated in the Settlement Agreement.   The Court grants in part and denies in part plaintiff's motion for approval of attorney's fees and reimbursement of expenses and grants plaintiff's motion for service award and release payment.

## FACTUAL BACKGROUND

Plaintiff filed this action on behalf of all non-exempt tipped employees who were employed at three different eateries within Terminal C of LaGuardia Airport:   1) Cotto, 2) Wibar, and 3) Voyage Bakery & Café (collectively, "the Restaurants") during the six year period prior to the filing of the Complaint.   (7/29/16 Pl.'s Mem.[2] at 1).   Plaintiff alleges that Cotto, Wibar, and Voyage Bakery & Café ("Voyage") are part of an integrated restaurant and retail chain that defendants jointly operate.   (Id. at 2).   Plaintiff claims that she was a non-exempt tipped employee, who was employed as a hostess at Cotto in or around November 2014.   (Mariani Decl.[3] ¶ 1).   She was promoted to the position of a server at Cotto in or around May 2015, and she worked continuously thereafter as a

---

[2]Citations to "7/29/16 Pl.'s Mem." refer to the Memorandum of Law in Support of Plaintiff's Motion for Conditional Collective Certification, filed July 29, 2016.
[3]Citations to "Mariani Decl." refer to the Declaration of Jenie Mariani, filed July 29, 2016.

server and occasionally as a bartender, as needed throughout the three Restaurants, until she was terminated in or around December 2015.   (Id. ¶ 1; 7/29/16 Pl.'s Mem. at 13).   Plaintiff alleges that throughout her employment, she worked shifts that lasted ten (10) or more hours per day.   (Mariani Decl. ¶ 6).   Plaintiff claims that she worked about thirty-five (35) hours per week, although she also states that from June through November 2015, she worked an average of forty-three (43) hours per week.   (Id. ¶ 5).

At all relevant times, defendants employed a General Manager, Martin de Durana, who managed the Restaurants and utilized assistant managers to directly supervise employees.   (Id. ¶ 3). Employees from all three Restaurants were provided with the same training manual and "were interchangeable" among the Restaurants.   (Id. ¶ 4).   Plaintiff alleges that throughout her employment, she was not paid any hourly or overtime wages; she was only paid in daily tips from the tip pool.   (Id. ¶¶ 4, 7, 10, 13).   She additionally alleges that defendants claimed an invalid tip credit allowance and therefore failed to pay the proper minimum wage.[4]   (7/29/16 Pl.'s Mem. at 10). Plaintiff states that she was paid in cash, never paid overtime for hours worked over 40 in any workweek, and never paid a spread-of-hours premium.   (Mariani Decl. ¶¶ 9, 10, 12).

Plaintiff also alleges that all non-exempt tipped employees at the Restaurants were subject to the same wage and hour conditions that she experienced.   (7/29/16 Pl.'s Mem. at 13).   Through her work at all Restaurants, she personally observed other non-exempt tipped employees at the

---

[4]A tip credit allowance of $5.12 per hour is the maximum amount of money from tips that an employer may legally count against the hourly wage an employee is earning, effective May 5, 2011. U.S. Dept. of Labor, Wage and Hour Division, Fact Sheet #15 Tipped Employees under the Fair Labor and Standards Act (2013), https://www.dol.gov/whd/regs/compliance/whdfs15.pdf.   Plaintiff alleges that more than the statutorily permissible amount of her hourly wage was based on tips in the employee tip pool.   (Pl.'s Mem. at 10-11).

Restaurants who were subject to the same policies and who were also included in the same tip pool. (Mariani Decl. ¶¶ 4, 7, 13).   According to plaintiff, employees were not informed as to how tips would be allocated and never agreed to a tip pool.   (Id. ¶ 7).   Plaintiff also alleges that she and other non-exempt tipped employees received fraudulent pay notices that "inaccurately stated that [they] could receive a base pay," which, plaintiff alleges, she never received.   (Id. ¶ 11).

On July 29, 2016, plaintiff submitted a motion for conditional certification of an FLSA collective action, seeking to certify a collective action for all non-exempt employees who were employed at the Restaurants in the last six years.   (7/29/16 Pl.'s Mem. at 1-2).   Defendants raised several objections to the certification motion, arguing that not only did they comply with the wage and hour laws, but also that the practices complained of did not apply across the Restaurants.   In addition, defendants sought to amend plaintiff's proposed Notice on the grounds that it should be limited to tipped servers and bartenders working at the Restaurants for the last two years.

On November 21, 2016, the Court granted plaintiff's motion for conditional certification of the FLSA collective action and approved the proposed Notice and Consent Form.   (See 11/21/16 Order[5]).   Plaintiff was directed to amend the Notice and Consent Form to include defendants' counsel's contact information and information requiring opt-ins to send consent forms to the Clerk of Court.   (Id.)

Thereafter, the parties notified the Court that they had reached a proposed settlement on behalf of the entire class.   On March 13, 2017, plaintiff, on behalf of both parties, filed a motion requesting preliminary approval of the proposed class settlement and for a conditional

---

[5] Citations to "11/21/16 Order" refer to the Court's November 21, 2016 Order granting conditional certification and circulation of the proposed Notice, ECF No. 36.

certification of a Rule 23 Class for settlement purposes.  (See 3/13/17 Mot.).[6]   On July 25, 2017, this Court entered an Order (1) preliminarily approving the settlement on behalf of the class; (2) conditionally certifying the settlement class; (3) appointing Lee Litigation Group, PLLC as Class Counsel; (4) appointing Advanced Litigation Strategies, LLC as Settlement Administrator; and (5) authorizing notice to all Class Members, subject to the Court's modifications.  (See 7/25/17 Order).[7]

Notice was then sent to the 342 potential Class Members.  (See 10/9/17 Pl.'s Mem. at 16[8]).  Following the Notice to Class Members, four potential claimants opted out of the settlement class.  (Id.; 10/12/17 Request for Exclusion[9]).  No objectors appeared during the fairness hearing.

On October 9, 2017, plaintiff filed 1) a motion for certification of the settlement class, final approval of the class action settlement and approval of the FLSA settlement; 2) a motion for approval of attorney's fees and reimbursement of expenses; and 3) motion for service award and release payment.  (10/9/17 Pl.'s Mot.).[10]   On November 7, 2017, this Court held a fairness hearing regarding the plaintiff's motion.

---

[6] Citations to "3/13/17 Mot." refer to plaintiff's Motion for Settlement and Preliminary Approval of Class Settlement, filed March 13, 2017, ECF No. 46.
[7] Citations to "7/25/17 Order" refer to the Court's Order granting plaintiff's motion for preliminary approval of the proposed settlement on July 25, 2017, ECF No. 50.
[8] Citations to "10/9/17 Pl.'s Mem." refer to the plaintiff's Memorandum in Support of Final Approval, filed October 9, 2017, ECF No. 58.
[9] Citations to "10/12/17 Request for Exclusion" refer to the Request for Exclusion from Class, filed Oct. 12, 2017, ECF No. 64.
[10] Initially two potential class members opted out of the class.  (See Pl.'s Mem. at 16).  Subsequently, two additional potential class members opted out of the class.  (See Request for Exclusion from Class, filed on Oct. 12, 2017, ECF No. 64).  During the fairness hearing conducted on November 7, 2017, plaintiff's counsel informed the Court that the four potential class members who had opted out had reached independent settlement agreements with defendants.

5

For the reasons stated herein, the Court grants plaintiff's motion for certification of the settlement class, and grants final approval of the class action settlement and approval of the FLSA settlement.   The Court denies plaintiff's motion for approval of attorney's fees and reimbursement of expenses in part and grants the motion for a service award and release payment.

DISCUSSION

I.   Final Approval of the Settlement Agreement

The Settlement Agreement requires defendants to fund a $300,000 settlement fund (the "Settlement Fund").   (3/13/17 Mem.[11] at 14).   Plaintiff separately requests attorney's fees in the amount of one-third of the Settlement Fund, approximately $100,000, to be deducted from the award.   (Sett. Agr.[12] at 11).   Plaintiff's counsel also seeks "reimbursement of reasonable litigation costs and expenses from the fund."   (3/13/17 Mem. at 4).   Plaintiff finally seeks a service award from the Fund to the named plaintiff in the amount of $5,000, as well as a release payment of $10,000 for the named plaintiff's global general release of claims.   (Id. at 5).   The

---

[11]Citations to "3/13/17 Mem." refer to the Memorandum of Law in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiff's Counsel as Class Counsel, and Approval of Plaintiff's Proposed Notice of Settlement filed on March 13, 2017.

[12] Citations to "Sett. Agr." refer to the Settlement Agreement, attached as Exhibit A to the Declaration of C.K. Lee in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiff's Counsel as Class Counsel, and Approval of Plaintiff's Proposed Notice of Settlement, dated March 13, 2017, ECF No. 48.

Settlement also provides for Claims Administrator's fees in the amount of $25,000 to be deducted from the Settlement Fund, and what remains of the award after these deductions will be apportioned to class members based on the number of weeks worked during the relevant period. (Id.)   The settlement is intended to encompass the NYLL and FLSA claims of the named plaintiff, Jenie Mariani, and the class members.   (Id. at 1).

A.   Standards

To grant final approval of a class settlement under Rule 23(e), the Court must determine that the proposed settlement is "fair, adequate, and reasonable, and not the product of collusion." Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000) (citations omitted); see Fed. R. Civ. P. 23(e).   Judicial policy favors the settlement and compromise of class actions.   Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116-17 (2d Cir. 2005); see also In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004).   Whether a settlement is fair is a determination within the sound discretion of the court.   Levitt v. Rodgers, 257 F. App'x 450, 453 (2d Cir. 2007) (citing In re Ivan F. Boesky Sec. Litig., 948 F.2d 1358, 1368 (2d Cir. 1991)).

Generally, approval of a class action settlement involves a two-step process.   First, the court preliminarily approves the proposed settlement by evaluating the written submissions and informal presentation of the settling parties and the negotiating process leading to the settlement. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 116.   Second, the court holds a fairness hearing to "determine whether the settlement's terms are fair, adequate, and reasonable . . . ." Capsolas v. Pasta Res., Inc., No. 10 CV 5595, 2012 WL 4760910, at *4 (E.D.N.Y. Oct. 5, 2012).

In evaluating a proposed settlement in order to grant preliminary approval, the court need only find that there is "probable cause" to submit the settlement to the class members and to hold a fairness hearing.   Hernandez v. Merrill Lynch & Co., No. 11 CV 8471, 2012 WL 5862749, at *1 (S.D.N.Y. Nov. 15, 2012) (quoting In re Traffic Exec. Ass'n E. R.Rs., 627 F.2d 631, 634 (2d Cir. 1980)).

In City of Detroit v. Grinnell Corp., the Second Circuit enumerated nine factors to guide courts at the final approval stage in evaluating the substantive fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the Settlement Fund in light of the best possible recovery; and (9) the range of reasonableness of the Settlement Fund to a possible recovery in light of all the attendant risks of litigation[.]

495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), abrogated on other grounds, Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000); see also D'Amato v. Deutsche Bank, 236 F.3d 78, 86 (2d Cir. 2001); Garcia v. Pancho Villa's of Huntington Village, No. 09 CV 486, 2012 WL 5305694, at *4 (E.D.N.Y. Oct. 4, 2012).

The court must also determine if the settlement was "achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the class's interests."   Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999) (citing Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982)); see also D'Amato v. Deutsche Bank,

236 F.3d at 85 (noting that the district court must "determine a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms"); In re Nissan Radiator/Transmission Cooler Litig., No. 10 CV 7493, 2013 WL 4080946, at *4 (S.D.N.Y. May 30, 2013).   In reviewing a proposed settlement, the court has the "'fiduciary responsibility of ensuring that the settlement is . . . not a product of collusion, and that the class members' interests [were] represented adequately.'"   Clement v. Am. Honda Fin. Corp., 176 F.R.D. 15, 29 (D. Conn. 1997) (internal citation omitted) (quoting In re Warner Commc'ns Secs. Litig., 798 F.2d 35, 37 (2d Cir. 1986)).

B.   Analysis of Procedural Fairness

The parties represent that the proposed settlement was entered into only after plaintiff's counsel "conducted a thorough investigation" in which counsel researched and assessed the "underlying merits of the class claims, the likelihood of obtaining liquidated damages, the proper measure of damages, and the likelihood of class certification." (Lee Decl.[13] ¶ 13).   Counsel "conducted in-depth interviews with plaintiff" and obtained and reviewed documents pertaining to the claim, including employment records provided by defendants and other documents provided by plaintiff. (3/13/17 Mem. at 2; Lee Decl. ¶ 14 ).   Following discovery, plaintiff filed for conditional collective certification on September 9, 2016. (3/13/17 Mem. at 2).   The

---

[13]Citations to "Lee Decl." refer to the Declaration of C.K. Lee in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiff's Counsel as Class Counsel, and Approval of Plaintiff's Proposed Notice of Settlement, dated March 13, 2017.

Court granted plaintiff's motion for conditional collective certification on November 21, 2016, and the parties "agreed to engage in a dialogue" about resolving the claims. (Id. at 2; Nov. 21, 2016 Order). The parties agreed to exchange "class-related information and payroll data" and subsequently "engage in mediation." (3/13/17 Mem. at 2).

The parties engaged in arms-length settlement negotiations through a private mediation overseen by mediator Carol A. Wittenburg. (Id. at 3). The parties state that on January 23, 2017, they attended an all-day mediation session during which they were able to reach a settlement in principle. (Id. at 3; Lee Decl. ¶¶ 19-21). Following the January 23rd meeting, the parties "continued negotiating the terms of the class settlement" which have since been memorialized in the Settlement Agreement. (3/13/17 Mem. at 3; Lee Decl. ¶ 20). Given the presumption of fairness when a class settlement has been reached after "arm's-length negotiations between experienced, capable counsel after meaningful discovery," see Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 116, the Court finds that the process of reaching the proposed settlement in this case was procedurally fair.

### C.   Analysis of Substantive Fairness

#### 1.   Complexity, Expense, and Likely Duration of the Litigation

Turning to the Grinnell factors, the parties seek "to avoid [the] significant expense and delay" that would result from continuing litigation. (3/13/17 Mem. at 3; Lee Decl. ¶¶ 19-21). Plaintiff claims that continued litigation would require additional discovery, including multiple depositions. (3/13/17 Mem. at 9). Plaintiff further notes that "most class actions are inherently

complex" and preparation for trial and the trial itself would require "tremendous amounts of time

and resources." (Id.)   Accordingly, the parties believe that this settlement allows for resolution

of the claims in a "prompt and efficient manner."  (Id.)   Thus, the first Grinnell factor of

avoiding potential protracted litigation favors settlement.

2.   Reaction of Class to Settlement

The reaction of the Class has been positive.   339 of the 342 class members had the class

settlement Notice mailed to them.   (10/9/17 Pls.' Mem. at 24).   Only three notices were

returned as undeliverable.  (Id.)   Of the 342 potential class members, only four individuals have

chosen to opt-out of the settlement,[14] and no individual made objections to the Court after the

Notice of settlement was mailed, and no objectors appeared during the fairness hearing

conducted on October 24, 2017.  (Id.)   "The fact that the vast majority of class members neither

objected not opted out is a strong indication that the proposed settlement is fair, reasonable, and

adequate."  Sakiko Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 432-33 (citing Wright v.

Stern, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008); see also Sewell v. Bovis Lend Lease, Inc., No.

09 CV 6548, 2012 WL 1320124, at *7 (S.D.N.Y. Apr. 16, 2012) (stating that "[t]he fact that the

overwhelming majority of class members have neither objected nor opted out weighs in favor of

settlement approval").

3.   Stage of Proceedings and Amount of Discovery Completed

The parties believe they have adequately evaluated the merits of the case and completed a

---

[14]  During the fairness hearing conducted on November 7, 2017, the parties conveyed that these four individuals had independently filed separate actions in the Southern District New York and reached separate settlement agreements with the defendant.

sufficient amount of discovery to warrant settlement.   (3/13/17 Mem. at 10).   Plaintiff has

obtained "substantial amounts of data" pertaining to the claims, including records that provide

employee information and "sample wage and hour records . . . for the relevant period."   (Id.)

The parties have engaged in months of litigation and negotiations, and as such are "well-

equipped to evaluate the strengths and weaknesses of the case."   (Id.)   The parties attended a

day-long mediation session overseen by a neutral third-party, Carol A. Wittenberg of JAMS, in

which they argued "their respective claims and defenses" and negotiated a settlement in a

cooperative and non-collusive manner.   (Id. at 10, 11).   When discovery has been extensive,

and counsel has sufficient information to appreciate the merits of the case, then settlement is

favored.  Tiro v. Public House Investments, LLC, No. 11 CV 7679, 2013 WL 4830949, at *7

(S.D.N.Y. Sept. 10, 2013); In re Warfarin Sodium Antitrust Litig., 391 F.3d at 537.   Given the

extent of discovery conducted in this case and the time spent between the parties negotiating the

settlement, the Court finds that this factor favors approval of the proposed settlement.

    4.   Establishing Liability and Damages and Maintaining the Action Through Trial

    The risk of establishing liability also favors settling this dispute.   Although plaintiff

"believes she could ultimately establish both liability and damages," continuing litigation through

trial inherently involves risk and uncertainty.   (Id. at 11).   A trial on the merits would involve

"resolution of liability issues" and likely an appeals process, both of which pose risk and

uncertainty with respect to outcome and duration.   (Id.)   Accordingly, the proposed settlement

seeks to alleviate these risks.   (Id.)   In light of the foregoing, considering the risks of appeal and

the prolonged nature of the litigation, the Court finds that this factor favors approval of the

proposed settlement.

     5.   Maintaining the Class Through Trial

Plaintiff acknowledges that there is a risk associated with obtaining and maintaining class certification through trial.  (Id. at 12).   If plaintiff were to move for class certification, defendants would likely oppose the motion and/or move for decertification and/or "seek permission to file an interlocutory appeal" in the event the Court grants conditional certification. (Id.)   This process "would require extensive briefing" by both parties and inherently involves risk, expense, and delay.   (Id.)   Since the proposed settlement would eliminate the aforementioned risk, expense, and delay, the Court finds that this factor favors approval.

     6.   Ability of Defendants to Withstand A Greater Judgment

The parties acknowledge that defendants "may be able to withstand a greater judgment." (Id.)   However, the parties contend that this alone should not preclude the Court from finding that the settlement is fair.   (Id.); see Frank v. Eastman Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005); In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000), aff'd sub nom. D'Amato v. Deutsche Bank, 236 F.3d 78.   Even if defendants could withstand a greater judgment, plaintiff argues that the Settlement Agreement "eliminates the risk of collection" insofar as it requires defendants to fund the Settlement Fund by March 27, 2017.   (Id.)   Accordingly, the Court finds that this factor also weighs in favor approval of the proposed settlement.

     7.   Range of Reasonableness of Settlement Fund

The Settlement Agreement provides that defendants will pay "a substantial amount."

(Id.)   Although plaintiff acknowledges that it is possible that plaintiff could recover a greater amount at trial, plaintiff also recognizes the inherent risks of trial.   (Id. at 13).   Plaintiff believes that in the "best case scenario," total recovery "would be, at most, approximately $1.2 million" for the class.   (Id.)   The $300,000 Settlement Fund thus represents a 25% recovery, which plaintiff says "is reasonable."   (Id.)   "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."   Johnson v. Brennan, No. 10 CV 4712, 2011 WL 4357376, at *11 (S.D.N.Y. Sept. 16, 2011) (quoting Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982)). When the proposed settlement provides a meaningful benefit to the class when considered against the obstacles to proving plaintiff's claims with respect to damages in particular, the agreement is reasonable.   See In re MetLife Demutualization Litig., 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010).

Even absent the risk of establishing damages at trial, the value of the Settlement Fund justifies settling this case.   Under the Settlement Agreement, class members will each receive their proportionate share (based on the number of weeks worked during the relevant period) of what remains after deducting from the $300,000 total award: an award for attorneys' fees, litigation costs and expenses, a service award to the named plaintiff of $5,000, and the Claims Administrator's fees of $25,000.   (Id. at 14).   The Court finds that the total award, including deductions for administrative costs and attorney's fees, is fair and reasonable.

On the basis of the foregoing discussion of the Grinnell factors, the Court finds that the proposed settlement is fair and reasonable under the circumstances present in this case.

14

## II.   Certification of the Settlement Class

Plaintiff moves pursuant to Fed. R. Civ. P. 23 for certification, for purposes of settlement, of a class consisting of all current and former employees of OTG Management and its subsidiaries and affiliates who worked as non-exempt, hourly tipped employees at any point between October 22, 2015 and January 23, 2017.

### A.   The Requirements of Rule 23(a)

Rule 23(a) of the Federal Rules of Civil Procedure governs class certification, providing:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to satisfying these prerequisites, plaintiff must also satisfy one of the three subdivisions of Rule 23(b):  (1) that separate actions pose a risk of inconsistent adjudications or would substantially impair the ability of other individuals to protect their interests; (2) injunctive or declaratory relief is sought concerning the class as a whole; or (3) common questions of law or fact predominate over individual questions and a class action is superior to other methods for bringing suit.  Fed. R. Civ. P. 23(b).  See generally Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997).  It is plaintiff's burden to establish compliance with the requirements of Rule 23, but

in analyzing the issue of certification, the court accepts as true the allegations in the complaint regarding the merits of the claim.   See D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. 451, 454 (E.D.N.Y. 1996) (citation omitted).   Pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure, "the court can make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date."   Collier v. Montgomery Cnty. Hous. Auth., 192 F.R.D. 176, 181 (E.D. Pa. 2000).   For purposes of settlement only, defendants did not oppose conditional certification.

The Court evaluated these factors in its July 25, 2017, preliminary conditional certification Order and found them to be met, and no party has moved for decertification of the class.   (See 7/25/17 Order).

### 3.   Class Certification

In light of the foregoing, the Court finds that plaintiff has satisfied the requirements of Rule 23(b)(3) and hereby grants certification of the class for the purposes of settlement. Pursuant to that provision, the Court Orders that a class, consisting of all current and former employees of OTG Management and its subsidiaries and affiliates who worked as non-exempt, hourly tipped employees at any point between October 22, 2015 and January 23, 2017, be certified for settlement purposes only.

## III.   Appointment of the Class Counsel

The Court also grants plaintiff's counsel's motion to be appointed as Class Counsel.   In evaluating the adequacy of Class Counsel, Rule 23(g) requires the Court to consider:   (1) the

work done by counsel in investigating the potential claims in the case; (2) counsel's experience in handling similar class actions and other complicated litigation; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will expend to represent the class.   Fed. R. Civ. P. 23(g).   In this case, Lee Litigation Group has extensive experience litigating and settling wage and hour cases and other employment cases, and thus they are well-versed in the applicable law. (Lee Decl. ¶¶ 7, 8).   Moreover, plaintiff's counsel has performed substantial work in this litigation, identifying, investigating, prosecuting, and settling the claims on behalf of the affected individuals.   (Id.)

Accordingly, the Court finds that proposed Class Counsel satisfy the criteria of Rule 23(g), and appoints the firm Lee Litigation Group as Class Counsel to represent the class members in this matter.


IV.   Adequacy of Notice

Pursuant to the Federal Rules of Civil Procedure, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal."   Fed. R. Civ. P. 23(e)(1).   Under Rule 23(e)(1), the "'[c]ourt has virtually complete discretion as to the manner of giving notice to class members.'"   In re MetLife Demutualization Litig., 689 F. Supp. 2d at 345 (quoting Handschu v. Special Servs. Div., 787 F.2d 828, 833 (2d Cir. 1986)).   In a Rule 23(b)(3) class action such as this, "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" must

be provided to the class.   Fed. R. Civ. P. 23(c)(2)(B).[15]   In Eisen v. Carlisle & Jacquelin, the Supreme Court held that individual notice, as opposed to general published notice, is required by Rule 23(c)(2) for class members who are identifiable through reasonable effort.   417 U.S. at 173-76 (holding that "individual notice to identifiable class members is not a discretionary consideration" but rather, is an "unambiguous requirement of Rule 23"); Becher v. Long Island Lighting Co., 64 F. Supp. 2d at 177.   Notice is adequate if it "'fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"   Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 114 (quoting Weinberger v. Kenrick, 698 F.2d at 70).   Notice need not be perfect, but must be the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members.   See Weigner v. City of New York, 852 F.2d 646, 649 (2d Cir. 1988).

Here, the Notice of Class Action Settlement was approved by the Court on July 25, 2017. (See 7/25/17 Order).   The Notice contained the following information:   (1) an explanation of who is entitled to a settlement award; (2) a brief contextual background to this lawsuit; (3) a summary of legal rights and options; (4) an explanation of the purpose of the Notice; (5) identifying information for Class Counsel; (6) an explanation of the benefits of settlement; (7) an

---

[15] The Rule further provides that, for any class certified under Rule 23(b)(3), the notice must "concisely and clearly state . . . (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."   Fed. R. Civ. P. 23(c)(2)(B).

overview of how each members' settlement amount will be calculated; (8) an overview of the process for obtaining a copy of the Settlement Agreement, which contains the allocation formula and other important information; (9) an overview of attorneys' fees, expenses, and the award that will be paid to the class representative; (10) the result if the Court approves or does not approve the Settlement Agreement; (11) an explanation of the Fairness Hearing, a blank space to specify the date and time of the hearing and the location of the hearing; (12) an overview of an individual's options regarding the Settlement Agreement; and (13) additional contact information for the Settlement Administrator should a recipient of the notice have any questions.   (See Lee Decl. Ex. A).

The Claims Administrator mailed the class notice to 342 potential claimants for whom the last known addresses were provided by defendants.   (10/9/17 Pl.'s Mem. at 26).   See Weinberger v. Kendrick, 698 F.2d at 72 (stating that mailing individual notices to class members at their last known addresses was a sufficient means of notification under the circumstances). 16 of the mailings were returned as undeliverable.   (10/9/17 Pl.'s Mem. at 24)   Afterwards, the Claims Administrator conducted a skip trace that allowed them to re-send out the notices that were returned.[16]   (Id.)   Three of those notices were once again returned as undeliverable.   (Id.) Ultimately, only those three Notices out of the total of 342 Notices sent to class members were returned as undeliverable.   (Id.)   The remaining 339 Notices were properly delivered.   (Id.) Following the Notice, four potential class members opted-out of the settlement.   (See 10/9/17

---

[16] According to plaintiff, the skip trace was conducted using a national change of address database and followed up by a phone call.

Pl.'s Mem. at 16; Request for Exclusion[17]).   The Court finds that the Rule 23 and FLSA Notices

fairly and adequately advised Class Members of the terms of the Settlement, as well as the right

of Rule 23 class members to opt out of or to object to the Settlement, and to appear at the

fairness hearing conducted on November 7, 2017.


   C.   Approval of Award for Plaintiff

   An "incentive" or "service" award is common in class actions and serves to compensate

plaintiffs for their time and effort in the pursuit of litigating the claim.   See In re Nissan

Radiator/Transmission Cooler Litig., 2013 WL 4080946, at *15; Capsolas v. Pasta Res. Inc.,

2012 WL 4760910, at *9.   The general "guiding standard" is, broadly, "the existence of special

circumstances including the personal risk (if any) incurred by the plaintiff[] in becoming and

continuing as a litigant . . . [or] any other burdens sustained by that plaintiff in lending himself or

herself to the prosecution of the claim, and, of course, the ultimate recovery."   Gay v. Tri-Wire

Eng'g Solutions, Inc., No. 12 CV 2231, 2014 WL 28640, at *13 (E.D.N.Y. Jan. 2, 2014)

(quoting Roberts v. Texaco, Inc., 979 F. Supp. 185, 200 (S.D.N.Y. 1997)).

   Courts often grant named plaintiffs in class action cases an enhanced award, either in the

form of a flat fee or a multiplied amount of their share of the settlement fund.   Compare

Capsolas v. Pasta Res. Inc., 2012 WL 4760910, at *10 (awarding a service award of $20,000 to

one named plaintiff and $10,000 for the remaining named plaintiffs), with Velez v. Majik

Cleaning Serv., Inc., 2007 WL 7232783, at *7 (awarding named plaintiffs "twice the amount of

---

[17] Citations to "Request for Exclusion" refer to the Request for Exclusion from the Class, filed Oct. 12, 2017, ECF No. 64.

the award that other class members will receive").

Here, plaintiff seeks a $5,000 service award "in recognition of the services she rendered on behalf of the class. . . and effort that [she] expended in furtherance of the class investigation and settlement, and the risks she endured in order to vindicate her rights and those of absent class members." (Pl.'s Mem. for Service Award[18] at 1).   Plaintiff also seeks a release payment in the amount of $10,000 to be paid from the Settlement Fund "in exchange for her full release of defendants for liability." (Id.)   Plaintiff's motion for approval of the service award and release payment is made simultaneously with, but independently of, plaintiff's motion for certification of the settlement class and final approval of the class and collective action settlements. (Id.)   This service award constitutes approximately 6% of the total settlement and defendants do not object to this award. (Id.)   Neither has there been any objections filed by another Class Member. (Id.)

Plaintiff argues that the $5,000 amount is reasonable given the "significant contributions made to advance the prosecution and resolution of the lawsuit" and that class representatives "play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny." (Id. (citing Bowens v. Atlantic Maint. Corp., 546 F. Supp. 2d 55, 90 (E.D.N.Y. 2008)).

The practice "of awarding an extra amount to named plaintiffs in a Rule 23 class action is widespread, and also is increasingly recognized as appropriate for named plaintiffs under the FLSA." Xiao Ling Chen v. XpressSpa at Terminal 4 JFK LLC, No. 15 CV 1347, 2018 WL

---

[18] Citations to "Pl.'s Mem. for Service Award" refer to plaintiff's Memorandum of Law in Support of Approval of Class Representative Service Award and Release Payment, filed October 9, 2017, ECF No. 60.

1633027, at *4 (E.D.N.Y. Mar. 30, 2018).   Courts are skeptical, however, "when the average

recovery to each member of the Collective appears small in comparison to the hefty payments to

. . . the named plaintiffs."   Id.; see also In re AOL Time Warner ERISA Litig., No. 02 CV 8853,

2007 WL 3145111, at *3 n. 10 (S.D.N.Y. Oct. 26, 2007).   Furthermore, "[i]f class

representatives expect routinely to receive special awards in addition to their share of the

recovery, they may be tempted to accept suboptimal settlements as the expense of the class

members whose interests they are appointed to protect."   Sakiko Fujiwara v. Sushi Yasuda Ltd.,

58 F. Supp. 3d at 434 (quoting Weseley v. Spear, Leeds & Kellogg, 711 F. Supp. 713, 720

(E.D.N.Y. 1989)).   Courts thus examine settlement agreements in the FLSA context to

determine if the proposed settlement "provides a meaningful benefit to the class when considered

against the obstacles to proving [plaintiffs'] claims with respect to damages in particular."   Id.

(citing Parker v. City of New York, No. 15 CV 6733, 2017 WL 6375736, at *7 (E.D.N.Y. Dec.

11, 2017)).

 The Court finds that the risks to named plaintiffs in FLSA collective actions are similar to

those in the Rule 23 class action context; named plaintiffs, in challenging practices of their

current employers, risk retaliation and loss of employment, and may also risk discrimination

from future employers who learn of the litigation. See Diaz v. Scores Holding Co., Inc., No. 07

CV 8718, 2011 WL 6399468, at *3 (S.D.N.Y. 2011) (stating that "[i]n FLSA collective actions,

just as in Rule 23 class actions, service awards are important to compensate plaintiffs for the

time and effort expended in assisting the prosecution of the litigation, the risks incurred by

becoming and continuing as a litigant, and any other burdens sustained by the plaintiff"); Velez

v. Majik Cleaning Serv., No. 03 CV 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 22, 2007)
(stating that "in employment litigation, the plaintiff is often a former or current employee of the
defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a
whole, undertaken the risk of adverse actions by the employer or co-workers").

The Court finds that given the participation of the named plaintiff in this case, and the
risks of future retaliation inherent in bringing an FLSA action as a named plaintiff, the service
payment requested in this case is reasonable.

Plaintiff also requests a "release payment" in the amount of $10,000 to be paid from the
Settlement Fund.   (Pl.'s Mem. for Service Award[19] at 8).   Plaintiff alleges in the Complaint that
defendants terminated her employment in 2015 in retaliation after she filed a worker's
compensation claim and requested a schedule change to accommodate her knee injury.   (Id.)
Plaintiff seeks a $10,000 release payment "designed to compensate [p]laintiff for her release of
such [retaliation] claim, as well as to compensate her for a global release of any and all other
potential claims."   (Id.)

Given plaintiff's independent claim against defendants for unlawful retaliation due to
issues with her employer apart from her participation in this litigation, the Court finds that the
additional payment of $10,000 as compensation for retaliation is fair under the circumstances.
Thus, the total the named plaintiff would receive from the Settlement Agreement is $15,000.
Although the concerns expressed by the court in Sakiko Fujiwara v. Sushi Yasuda Ltd., that
caution against added payments to named plaintiffs that may result in class representatives

---

[19] Citations to "Pl.'s Mem. for Service Award" refer to plaintiff's Memorandum of Law in Support of Approval of
Class Representative Service Award and Release Payment, filed October 9, 2017, ECF No. 60.

accepting settlement offers that are not beneficial to the class as a whole, 58 F. Supp. 3d at 434,

is a legitimate concern here, there is no indication that any of the 342 potential Class Members

had claims of this nature.


    D.   Approval of Requested Costs

    Additionally "[i]t is well established that counsel who create a common fund like this one

are entitled to the reimbursement of litigation costs and expenses."   In re Marsh ERISA Litig,

265 F.R.D. 128, 150 (S.D.N.Y. 2010) (approving costs and expenses of $1,270,915.40); see also

In re Vitamin C Antitrust Litig., 2012 WL 5289514, at *7, 9-11 (approving attorneys' expenses

of $2.5 million to be paid out of a settlement fund of $9.5 million); In re Veeco Instruments, Inc.,

No. 05 MDL 01695, 2007 WL 4115808, at *11 (S.D.N.Y. Nov. 7, 2007) (awarding over

$700,000 in costs and expenses).   The costs and expenses requested by Class Counsel represent

filing fees and mailing costs amounting to $5,842.   (Pl.'s Mem. for Attorney's Fees at 24).   The

defendants have not objected to these costs, nor have any of the Class Members.


    E.   Approval of Requested Administration Fees

    Plaintiff finally seeks $25,000 in Administration Fees, to be paid to Advanced Litigation

Strategies, "an administration company under common control of class counsel."   (Id. at 24).

According to plaintiff, Advanced Litigation Strategies "has acted as the Settlement Administrator

in thus lawsuit and has disseminated Notices to Class Members, performed calculations of

awards to each Class Member, and maintained correspondences with Class Members."   (Id.)

Plaintiff requests fees of $25,000 to be paid from the Settlement Fund "which is consistent with prevailing market rates." Defendants do not object to the Administration Fees. (Id.). The Court finds that the Administration Fees are reasonable in this case.

### F. Requested Attorneys' Fees

Plaintiffs' counsel seeks $100,000 in fees and costs accrued during this litigation, which equals one-third of the total settlement amount. (Pl.'s Mem. for Attorney's Fees[20] at 1). The settlement is "not conditioned on the award of attorneys' fees and costs as approval of class settlement will be considered separately from approval of fees and costs." (Id.) The Court must determine if this proposed amount of attorney's fees and costs is fair and reasonable.

#### 1. Legal Standard

The FLSA provides for "a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). In this circuit, courts may assess the fairness of an award for attorney's fees using either the percentage-of-the-fund or the lodestar method. McDaniel v. County of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010) (citing Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d at 121). An award based on a percentage of the common fund method recognizes that "attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work." In re Lloyd's Am. Trust Fund Litig., No. 96 CV 1262, 2002 WL 31663577, at *24 (S.D.N.Y. Nov. 26, 2002).

---

[20] Citations to "Pl.'s Mem. for Attorneys' Fees" refer to plaintiff's Memorandum of Law in Support of Approval of Attorney's Fees, Administration Fees and Reimbursement of Expenses, filed October 9, 2017, ECF No. 62.

Alternatively, the lodestar method involves the multiplication of the number of hours

reasonably billed to the class by an appropriate hourly rate, and once that computation has been

made, the court may increase the lodestar by adding a multiplier of that number "based on other

less objective factors," including the risk of litigation or the attorneys' performance, for example.

Goldberger v. Integrated Res., Inc., 209 F.3d at 47 (citations omitted) (internal quotation marks

omitted).   This method has been viewed as a more objective or mathematical approach to

compensation, as it considers an award in terms of quantifiable, numerical values.   See id. at 47-

50.   Under either method, the fees awarded in common fund cases "may not exceed what is

reasonable under the circumstances."   Id. at 47 (internal quotation marks omitted).   To

determine the "reasonableness" of a common fund attorney's fee, courts use the following

Goldberger factors:

> (1) the time and labor expended by counsel; (2) the magnitude and
> complexities of the litigation; (3) the risk of the litigation; (4) the
> quality of representation; (5) the requested fee in relation to the
> settlement; and (6) public policy considerations.

Id. at 50 (citing In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig., 724 F. Supp. 160,

163 (S.D.N.Y. 1989)).   Under Goldberger, courts in this circuit "have declined to award more

than one third of the net settlement amount as attorneys' fees except in extraordinary

circumstances."   Surdu v. Madison Global, LLC, No. 15 CV 6567, 2018 WL 1474379, at *12

(S.D.N.Y. Mar. 23, 2018) (citing Santos v. EL Tepeyac Butcher Shop Inc., No. 15 CV 814, 2015

WL 9077172, at *3 (S.D.N.Y. Dec. 15, 2015)); see also Zhang v. Lin Kumo Japanese Rest. Inc.,

No. 13 CV 6667, 2015 WL 5122530, at *4 (S.D.N.Y. Aug. 31, 2015) (citing cases).

The trend in this circuit is toward the percentage method because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." Wal-Mart Stores, Inc. v. Visa U.S.A., 396 F.3d at 121 (quoting In re Lloyd's Am. Trust Fund Litig., 2002 WL 31663577, at *25).   It also eliminates potential incentives of the lodestar approach to increase the number of billable hours and prolong litigation.   (Id.)   Still, the Second Circuit acknowledged in Goldberger v. Integrated Res., Inc. that the "lodestar [method] remains useful as a baseline even if the percentage method is eventually chosen," and encouraged "the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." 209 F.3d at 50; see also Gay v. Tri-Wire Eng'g Solutions, Inc., 2014 WL 28640, at *11 (collecting cases in which the court cross-checked the reasonableness of a percentage fee by performing a lodestar-multiplier analysis).   Based on awards in similar cases and the application of the Goldberger factors, with a cross-check using the lodestar method, the Court concludes that the requested amount of one-third of the Settlement Fund is reasonable, but this amount should be calculated after the costs and Administrator Fees have been deducted from the Fund.

2.   Analysis of Fairness of Requested Percentage-of-the-Fund Award

    a.   Goldberger Factor Analysis

The first Goldberger factor considers the time and labor expended by counsel.   Here, Class Counsel represents that they have "spent more than 266 attorney and paralegal hours" on this case, including investigation into potential claims and defenses, discovery and review of pay

27

records, and other related documents, and negotiation and mediation efforts to resolve the matter

including an all-day private mediation.   (Pl.'s Mem. for Attorney's Fees at 1, 9).   While class

counsel worked diligently on this matter, they did not expend an extraordinary amount of time on

this case.   (See Sakiko Fujiwara v. Sushi Yasuda, 58 F. Supp. 3d 424, 435 (stating that "class

counsel did not expend an extraordinary amount of time and labor on this case . . . all told, they

billed fewer than 650 hours on the matter, including paralegal time").

Second, the Court considers the magnitude and complexities of the litigation.   Courts

recognize that many labor cases involve complex legal issues.   However, "[a]mong FLSA cases,

the most complex type is the 'hybrid' action . . . where state wage and hour violations are

brought as an 'opt out' class action pursuant to Federal Rule of Civil Procedure 23 in the same

action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)."   Johnson v.

Brennan, No. 10 CV 4712, 2011 WL 4357376, at *17 (S.D.N.Y. Sept. 16, 2011).   Thus, given

that the present case is such a hybrid action, this factor supports counsel's requested award.

The third Goldberger factor considers counsel's risk in undertaking the litigation.   Here,

counsel assumed the sizeable risk that they would not recover anything, since their fee

entitlement depended on obtaining a favorable outcome for the Class.   (See Pl.'s Mem. for

Attorney's Fees at 13).   "Uncertainty that an ultimate recovery will be obtained is highly

relevant in determining the reasonableness of an award;" therefore, the fact that counsel's

compensation was entirely dependent upon securing success weighs in favor of approving the

fee.   Johnson v. Brennan, WL 4357376, at *17 (citing City of Detroit v. Grinnell Corp., 495

F.2d at 470).

Fourth, to determine the quality of the Class representation, "courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." Johnson v. Brennan, 2011 WL 4357376, at *18 (quoting Taft v. iAckermans, No. 02 CV 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (citations omitted)). The Court has determined, supra, that the recovery obtained provides sufficient benefit for the Class Members. Additionally, this Court acknowledged in its July 25, 2017 Order that Class Counsel has "extensive experience litigating and settling wage and hour cases and other employment cases." (Order 7/25/17 at 20). Thus, this factor also weighs in favor of approving the award.

The fifth factor requires a comparison of the requested fee in relation to the Settlement. Plaintiffs' attorneys request fees in the amount of one-third of the total Settlement Fund. Regardless of the method used to calculate attorney's fees, "courts in this Circuit have routinely upheld attorney's fees awards of 30%-33.3% in class action cases where a counsel's fee award was entirely contingent on success." Gay v. Tri-Wire Eng'g Solutions, Inc., 2014 WL 28640, at *11; See, e.g., Febus v. Guardian First Funding Group, LLC, 870 F. Supp. 2d 337, 339-340 (S.D.N.Y. June 22, 2012) (awarding a 33% fee of a $850,000 settlement, noting that a fee of one-third of the fund is typical, and that courts have awarded 33% of "substantially larger settlement funds in similar combined FLSA-NYLL wage and tip actions); Johnson v. Brennan, 2011 WL 4357376, at *18-19 (finding that the "modest" size of a $440,000 settlement weighed in favor of granting the requested fee award of 33% of the common fund); Prasker v. Asia Five Eight LLC, No. 08 CV 5811, 2010 WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010) (awarding a fee award of $346,500, or 33%, of the common fund in an FLSA and NYLL settlement).

29

Here, the total Settlement Fund consists of $300,000 for a class of 338 potential class members.   Plaintiff requests attorney's fees in the amount of $100,000, costs in the amount of $5,842, Administration Fees in the amount of $25,000 and additional payments to the named plaintiff totaling $15,000.   In all, the Settlement Fund would then provide for an average award of $456.09 per class member.   Viewed in light of the overall amount of the Settlement Fund that would be available to class members, this factor weighs against granting a flat $100,000 in attorney's fees.

The sixth and final Goldberger factor involves an inquiry into the public policy considerations.   As discussed above, the structure of a percentage-of-the-fund award provides a strong incentive for early resolution of litigation and efficient handling of cases.   See Wal-Mart Stores, Inc. v. Visa U.S.A., 396 F. 3d at 122.   The percentage approach is an "efficient means of rewarding the work of class action attorneys, and avoids the wasteful and burdensome process – to both counsel and the courts – of preparing and evaluating fee petitions."   In re Lloyd's Am. Trust Fund Litig., 2002 WL 31663577, at *25.


b.   Lodestar Method Analysis

Class Counsel is requesting an award of $100,000 for attorney's fees, a 1.24 multiplier of the lodestar calculation.   (Pl.'s Mem. for Attorney's Fees at 2).   Defendant did not object to Class Counsel's application for attorney's fees and costs, nor have any Class Members lodged an objection to the fees requested by Class Counsel.   (Id.)   The Court must independently assess, however, the request for attorney's fees.

30

"Courts regularly award multipliers from two to six times the lodestar." Monserrate v. Tequipment, Inc., No. 11 CV 6090, 2012 WL 5830557, at *3 (E.D.N.Y. Nov. 16, 2012); see In re Lloyd's Am. Fund Litig., No. 96 CV 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (awarding attorneys' fees to be paid out of a settlement fund resulting in a positive lodestar multiplier of 2.09 and noting that this "is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); Febus v. Guardian First Funding Group, LLC, 870 F. Supp. 2d at 340 (finding that "[f]or fees of $283,333 and a lodestar of $127,000, the resulting 'lodestar multiplier' of 2.2 is well within the range of acceptable"); Maley v. Del Global Tech. Corp., 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (concluding that a lodestar multiplier of 4.65 is "well within the range awarded by courts in this Circuit and courts throughout the country").

However, "[a] negative multiplier of plaintiff counsel's lodestar is not out of the ordinary in common fund cases, particularly where awarding a positive multiplier of the lodestar may 'swallow up' a significant portion of the settlement funds." Monserrate v. Tequipment, Inc., 2012 WL 5850557, at *3 (citing Fears v. Wilhelmina Model Agency, Inc., No. 02 CV 4911, 2007 WL 1944343, at *5 (S.D.N.Y. July 5, 2007) (collecting cases), aff'd in part, remanded in part on other grounds, 473 F.3d 423 (2d Cir.2007).

This request for attorney's fees is such an instance where the total fees and expenses risk swallowing up a significant portion of the total fund. As discussed supra at 28, the total Settlement Fund consists of $300,000 for a class of 338 potential class members. Plaintiff requests attorney's fees in the amount of $100,000, costs in the amount of $5,842, Administration Fees in the amount of $25,000 and additional payments to the named plaintiff

totaling $15,000.   In all, the Settlement Fund would then provide for an average award of $456.09 per class member.

To the extent that plaintiff's counsel seeks attorney's fees in the amount of one-third of the Settlement Fund, courts in this circuit "have declined to award more than one third of the *net* settlement amount as attorneys' fees except in extraordinary circumstances." Surdu v. Madison Global, LLC, 2018 WL 1474379, at *12 (citing Santos v. EL Tepeyac Butcher Shop Inc., 2015 WL 9077172, at *3) (emphasis added).

Although the Court finds plaintiff's request for attorney's fees of one-third of the settlement to be reasonable, the Court further finds that that one-third should be calculated based on the net settlement amount, after litigation expenses and administration costs are deducted from the gross settlement amount.   Thus, once the costs of $5,842 and administration costs of $25,000 are deducted from the $300,000 Settlement Fund, plaintiff's counsel would be entitled to one-third of the remaining amount, $89,719.00 in attorney's fees, which is closer to plaintiff's lodestar of $80,987.50.   (See Mem. for Fees[21] at 1).

Viewed in light of the overall amount of the Settlement Fund that would be available to class members, and the precedent limiting attorney's fees to one-third of the net settlement amount, the Court denies plaintiff's request for a flat award of $100,000 in attorney's fees.   The Court does approve attorney's fees in the amount of $89,719.00, which is equivalent to one-third of the total settlement amount once costs and administrative costs are deducted from the

---

[21] Citations to "Mem. for Fees" refer to plaintiff's Memorandum of Law in Support of Plaintiff's Unopposed Motion for Approval of Attorney's Fees, Administration Fees and Reimbursement of Expenses, filed Oct. 9, 2017, ECF No. 62.

Settlement Fund.

## CONCLUSION

Accordingly, for the reasons stated above, the Court grants plaintiff's motion for certification of the class for the purposes of settlement, and grants final approval of the settlement as articulated in the Settlement Agreement.   The Court grants in part and denies in part plaintiff's motion for approval of attorney's fees and reimbursement of expenses and grants plaintiff's motion for service award and release payment.

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
September 28, 2018

/s/ Cheryl L. Pollak

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

33